## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| ROBERT W. GALEY, JR. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 22-cv-6203 |
| JOSEPH R. BIDEN, JR., in his official | ) | |
| capacity as Commander in Chief; LLOYD J. | ) | **COMPLAINT FOR DECLARATORY,** |
| AUSTIN, III, in his official capacity as | ) | **INJUNCTIVE, AND OTHER RELIEF** |
| United States Secretary of Defense; | ) | |
| CHRISTINE WORMUTH, in her official | ) | |
| capacity as United States Secretary of the | ) | |
| Army; YVETTE K. BOURCICOT, in her | ) | |
| official capacity as Acting Assistant | ) | |
| Secretary of the Army; RAYMOND S. | ) | |
| DINGLE, in her official capacity as Surgeon | ) | |
| General of the United States Army; UNITED | ) | |
| STATES DEPARTMENT OF DEFENSE; | ) | |
| | ) | |
| Defendants. | ) | |

## INTRODUCTION

Master Sergeant Robert W. Galey, Jr.'s Christian faith commands him to a life of service. That's why he's given 16 years of his life to the Army as an active-duty infantry Soldier assigned to posts and installations across the country. That's why he's deployed eight times to combat zones like Iraq and Afghanistan. That's why he wants to continue to train and lead the Soldiers under his charge as a First Sergeant at Joint Readiness Training Center, Fort Polk, Louisiana.

Master Sergeant Galey has served for all that time and through all that hardship because of his strong faith. Now, Defendants are doing everything they can to force Master Sergeant Galey out of the Army just a few years shy of retirement because of the sincere religious beliefs borne of that faith: that he should not take the COVID-19 vaccine. Master Sergeant Galey told the Defendants about his sincerely-held religious belief and requested a reasonable

accommodation. His immediate commander supported him. His chaplain recognized the sincerity of his belief. Master Sergeant Galey had recovered from COVID-19 and even the Centers for Disease Control ("CDC") has recognized the superior immunity this provides to those who have taken the vaccine.[1] Master Sergeant Galey is willing to social distance, wear a mask, COVID test, and mitigate the minimal threat he poses.

None of this was good enough for Defendants. Despite Defendant Biden's own proclamation months ago that "the pandemic is over,"[2] the pandemic is not over for Master Sergeant Galey: Defendants are working to imperil his retirement, medical, and the pension he was planning on to provide for his family as they separate him without benefits. Courts across this nation have taken up this issue and ruled against Defendants repeatedly, protecting the religious liberty rights of Sailors, Airmen, and Marines who have made religious accommodation requests. Soldiers like Master Sergeant Galey, and thousands of his comrades in arms in the country's largest and oldest fighting force – the United States Army – remain threatened by Defendants' arbitrary, capricious, and unconstitutional actions.

Recent news that the National Defense Authorization Act ("NDAA") of 2023 contains language requiring the services to rescind their vaccine mandates[3] does nothing to ensure that the

---

[1] Centers for Disease Control and Prevention, "Science Brief: SARS-COV-2 Infection-induced and Vaccine induced Immunity," (Oct. 29, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated- people.html (hereafter, "CDC Immunity Brief").

[2] Rebecca Falconer, *Biden: "The pandemic is over,"* AXIOS (Sep. 18, 2022), https://tinyurl.com/AxiosPandemic.

[3] On December 6, 2022, the United States House of Representatives Committee on Rules issued Rules Print 117-70, showing the text of the proposed James M. Inhofe National Defense Authorization Act for Fiscal Year 2023. Section 525 of the legislation is titled "Rescission of COVID-19 Vaccination Mandate." In full, Section 525 provides:

> Not later than 30 days after the date of the enactment of this Act, the Secretary of Defense shall rescind the mandate that members of the Armed Forces be vaccinated against COVID-19 pursuant to the memorandum dated August 24, 2021, regarding "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members."

https://rules.house.gov/sites/democrats.rules.house.gov/files/BILLS-117HR7776EAS-RCP117-70.pdf

damage done to Master Sergeant Galey will end. Even without the threat of termination, Master Sergeant Galey's enviable record has been permanently marred by career-stunting counseling entries, loss of training opportunities, and removal from his position in leadership as First Sergeant simply because he requested an accommodation to practice his faith. These actions will do lasting harm to his military career if not enjoined. They violate the Religious Freedom Restoration Act and the First Amendment and Master Sergeant Galey seeks recourse to this Court to vindicate the law and Constitution.

## JURISDICTION AND VENUE

1.　　This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action arises under the Constitution of the United States and federal law.

2.　　This Court has jurisdiction under 28 U.S.C. § 1346 because this is a civil action against the United States.

3.　　This Court has jurisdiction under 28 U.S.C. § 1361 to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the Plaintiff.

4.　　This Court has jurisdiction pursuant to 42 U.S.C. § 2000bb-1(c) because Plaintiff's religious exercise has been burdened by Defendants.

5.　　This Court has jurisdiction to review Defendants' unlawful actions and inactions and enter appropriate relief under the Administrative Procedure Act, 5 U.S.C. §§ 701- 706.

6.　　This Court has jurisdiction to review and enjoin ultra vires or unconstitutional agency action through an equitable cause of action. *Larson v. Domestic & Foreign Commerce Corp.*, 337 U.S. 682, 689-92 (1949).

7.　　This Court has authority to award the requested relief pursuant to 42 U.S.C. § 2000bb-1 and *Tanzin v. Tanvir*, 141 S. Ct. 486 (2020); the requested declaratory relief pursuant to

28 U.S.C. §§ 2201-02; the requested injunctive relief pursuant to 5 U.S.C. § 702 and 28 U.S.C. § 2202; and award costs and attorneys' fees pursuant to 42 U.S.C. § 1988(b).

8.     Venue is proper in this district pursuant to 28 U.S.C. § 1402 and 28 U.S.C. § 1391(e) because Defendants are officers and employees of the United States and agencies of the United States, and the military workplace and the location in which a substantial part of the events or omissions giving rise to the claims is within this district at Fort Polk in Vernon Parish, Louisiana Plaintiff resides in the Western District of Louisiana. The proximity of the Western District of Louisiana to Plaintiff's base and abode makes that venue the most convenient.

## PARTIES

### Plaintiff

9.     Plaintiff Robert W. Galey, Jr., is a Master Sergeant in the United States Army. Master Sergeant Galey has served honorably for over 16 years on active duty, deploying eight times to Iraq and Afghanistan (seven with Special Operations). Master Sergeant Galey is a dedicated Soldier who loves his country and wants to finish his career. Master Sergeant Galey is a devout Christian who holds a sincere religious belief developed after prayer and reflection that he must not take the available COVID-19 vaccines because of the use of aborted fetal cell lines in their testing and production. His efforts to vindicate his rights within the military have thus far been systematically denied and his request has been met with punishment: he has been removed from leadership, counseled in his permanent record, and deprived of training and promotion opportunities. He has been threatened with imminent separation, ending his storied military career and resulting in the loss of hundreds of thousands of dollars in benefits for him and his family earned at retirement. Despite the cost, Master Sergeant Galey will not violate his religious principles.

10.     Master Sergeant Galey served as the First Sergeant of Task Force 1, Operations Group, Joint Readiness Training Center Fort Polk before making his request, a position of leadership and authority in his unit.

11.     On October 14, 2021, Master Sergeant Galey submitted a request for a religious accommodation to be exempted from the Army's COVID-19 vaccination requirement based on his sincerely-held religious beliefs.

12.     On October 17, 2021, Master Sergeant Galey's minister submitted a letter supporting his request for a religious accommodation request. He wrote,

> knowing Robert and his wife for many years, I can speak to the sincerity of Robert's beliefs and the legitimacy of this request. Robert told me that, upon being made aware of the mandate to receive the COVID vaccine, he began to earnestly pray, fast, and seek the will of God and to search the Scriptures as to how he should respond, and whether he should accept the shot.

13.     On October 19, 2021, Captain Christopher S. Kitchens, Chaplain, US Army, interviewed Master Sergeant Galey regarding his religious beliefs and concluded "that 1SG Galey's religious beliefs are sincerely held."

14.     On October 21, 2021, Master Sergeant Galey's immediate commander, Captain Benton F. Roe, U.S. Army, supported his religious accommodation request and recommended approval of it.

15.     On November 4, 2021, without having conducted a single interview with Master Sergeant Galey, his then Commander, Colonel Andrew O. Saslav, U.S. Army, recommended disapproval of Master Sergeant Galey's religious accommodation request. Colonel Saslav wrote, "I find that MSG Galey does not have a sincerely held religious belief, [sic] which is in opposition to receiving the vaccine" and "I have full confidence in [sic] MSG Galey's request is motivated by misinformation and not based on beliefs…"

16.     On March 14, 2022, the Surgeon General of the Army, Lieutenant General Raymond S. Dingle, U.S. Army, denied Master Sergeant Galey's religious accommodation request.

17.     On March 23, 2022, Master Sergeant Galey appealed the denial of his religious accommodation request to the Assistant Secretary of the Army for Manpower & Reserve Affairs.

18.     On September 28, 2022, Master Sergeant Galey's appeal was denied by the Acting Assistant Secretary of the Army for Manpower and Reserve Affairs, Yvette K. Bourcicot. This decision, she wrote, was "final."

19.     On December 15, 2022, Master Sergeant Galey was informed by his commander that his Commanding General has decided to move forward with a General Officer Memorandum of Reprimand" ("GOMOR") and separation procedures despite the forthcoming policy language in the NDAA. Master Sergeant Galey was told to come in on December 20, 2022, for the acknowledgement of this career-damaging reprimand.

20.     Master Sergeant Galey has faced significant career repercussions already: he was laterally demoted from his role in leadership as First Sergeant and replaced by a lower ranked Soldier. He has been denied important training opportunities. His orders for important follow-on assignments have been deleted. And his service record book now contains counseling entries that, on information and belief, will stymie his career advancement.

21.     Master Sergeant Galey has been threatened with imminent involuntary administrative separation, the loss of his military career, and the loss of all military medical and retirement benefits going forward.

**Defendants**

22.     Defendant Joseph R. Biden, Jr., is the President of the United States and the Commander in Chief. President Biden directed the DoD to add the COVID-19 vaccine to its list of required immunizations for all service members on July 29, 2021. President Biden is sued in his official capacity.

23.     Defendant Lloyd J. Austin, III, is the United States Secretary of Defense. Secretary Austin issued a memorandum on August 24, 2021, which requires the United States Armed Forces to vaccinate all service members, including Plaintiff. Secretary Austin is sued in his official capacity.

24.     Defendant Christine Wormuth is the United States Secretary of the Army. Secretary Wormuth issued a directive on September 14, 2021, which required the Army to vaccinate all service members against COVID-19, including Plaintiff. Secretary Wormuth is sued in her official capacity.

25.     Defendant Yvette K. Bourcicot is the acting Assistant Secretary of the Army and is responsible for the denial of thousands of religious accommodations appeals as the final appellate authority for the Army. Assistant Secretary Bourcicot is sued in her official capacity.

26.     Defendant Raymond S. Dingle is the Surgeon General of the United States Army and the Commanding General, Army Medical Command. He is the Army official responsible for determining the outcome of religious accommodation requests with respect to COVID-19 vaccinations. Lieutenant General Dingle is being sued in his official capacity.

27.     Defendant United States Department of Defense ("DoD") is an executive branch department that coordinates and supervises all agencies and functions of the government related to the United States Armed Forces, including the vaccination policies at issue herein.

## FACTUAL BACKGROUND

### Defendants' Vaccine Mandate

28.     On or about July 29, 2021, President Joseph Biden directed the DoD to add the COVID-19 vaccine to its list of required immunizations for all service members.[4]

29.     On August 24, 2021, Secretary Austin issued a memorandum entitled "Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members" ("the DoD Vaccine Mandate"). A true and correct copy of the DoD Vaccine Mandate is attached as Exhibit A to this Complaint. The DoD Vaccine Mandate directs DoD to vaccinate all active duty and reserve service members against COVID-19.

30.     The DoD Vaccine Mandate provides that service members actively participating in COVID-19 clinical trials are exempted from the DoD Vaccine Mandate until the trial is complete.

31.     The DoD Vaccine Mandate states that the Department of Defense will implement the DoD Vaccine Mandate consistent with DoD Instruction 205.02, "DoD Immunization Program," dated July 23, 2019.

32.     The DoD Vaccine Mandate states that all service members who previously contracted COVID-19 and now have active antibodies against the virus are not considered fully vaccinated and are still required to receive a vaccination against COVID-19.

---

[4] *See* The White House, "FACT SHEET: President Biden to Announce New Actions to Get More Americans Vaccinated and Slow the Spread of the Delta Variant" (July 29, 2021), https://tinyurl.com/WhiteHouseDelta/ ("Today, the President will announce that he is directing the Department of Defense to look into how and when they will add COVID-19 vaccination to the list of required vaccinations for members of the military."); Meghann Meyers & Howard Altman, *Pentagon, Reacting to Biden Order, Working on Plan for Mandatory COVID-19 Vaccinations*, MILITARY TIMES (Oct. 21, 2021), https://tinyurl.com/MilTimesMilMandate/.

33. The DoD Vaccine Mandate states that the Military Departments, including the Army, Army Reserve, and Air National Guard, should use existing policies and procedures to manage mandatory vaccination of service members to the extent practicable.

34. The DoD Vaccine Mandate states that vaccination of service members will be subject to any identified contraindications and any administrative or other exemptions established in Military Department policy.

35. On September 14, 2021, Secretary Wormuth issued an order directing "all Soldiers, not otherwise exempt, to become fully vaccinated against COVID-19." A true and correct copy of the order, FRAGO 5 to HQDA EXORD 225-21 (COVID-19 Steady State Operations), is attached as Exhibit B to this Complaint. The order states, "If the Soldier continues to refuse to be immunized, counsel the Soldier in writing that he or she is legally required to be immunized, that if the Soldier continues to refuse to be immunized that he or she will be legally ordered to do so and that failure to obey the order may result in adverse administrative or punitive action as deemed appropriate by the commander. Order the Soldier to receive the immunization." *Id.*

36. On November 16, 2021, Secretary Wormuth distributed a memorandum stating that "all Soldiers who refuse the mandatory vaccination order, and who have not received, and are not pending final decision on, a medical or administrative exemption, will remain flagged…" "Favorable personnel actions are suspended for flagged Soldiers… including, but not limited to, reenlistment, reassignment, promotion, appearance before a semi-centralized promotion board, issuance of awards and decorations, attendance to military or civilian schools, application for or use of tuition assistance, payment of enlistment bonus or selective reenlistment bonus, or assumption of command." A true and correct copy of the memorandum is attached as Exhibit C to this Complaint. Secretary Wormuth "authorize[d] commanders to impose bars to continued service

. . . for all Soldiers who refuse the mandatory vaccination order." *Id.* "Commanders will initiate a GOMOR on Soldiers who do not receive the vaccination. *Id.* On information and belief, a GOMOR in a service record ends any realistic chance of promotion.

37.     On January 31, 2022, Secretary Wormuth distributed a memorandum providing additional guidance on "personnel policies and procedures for unvaccinated individuals . . . who refuse the novel Coronavirus 2019 (COVID-19) vaccination order." A true and correct copy of the memorandum is attached as Exhibit D to this Complaint. That guidance stated:

> Effective immediately, commanders will initiate involuntary administrative separation proceedings for Soldiers who have refused the lawful order to be vaccinated against COVID-19 and who do not have a pending or approved exemption request. Commands will process these separation actions, from initiation to a Soldier's potential discharge, as expeditiously as possible.

*Id.*
The guidance also stated that the basis for enlisted separation will be "Commission of a Serious Offense." *Id.* On information and belief, this separation basis is usually reserved for significant criminal misconduct. Officers who refused the vaccine would be separated on the basis of "Misconduct, Moral or Professional Dereliction." *Id.* The guidance made clear that an administrative separation board's recommendation of retention of an unvaccinated Soldier would be ignored and that "Secretarial Plenary Authority" would be instituted to ensure separation. *Id.*

38.     Defendants have discretion in granting religious accommodation requests[5] and medical and administrative accommodations.

---

[5] *See, e.g.*, Department of Defense Instruction ("DODI") 1300.17, Religious Liberty in the Military Services, dated September 1, 2020.

39.     As of September 16, 2022, the Army had granted 12,039 temporary exemptions and 44 permanent medical exemptions from the DoD Vaccine Mandate.[6]

40.     As of September 16, 2022, the Army had denied 1,804 religious accommodation requests regarding the DoD Vaccine Mandate. *Id.* Out of 8,476 requested across all components of the Army, the Army granted only 32 permanent religious accommodation requests. *Id.*

41.     Defendants have denied 98.2% of religious accommodation requests. *See id.*

42.     On information and belief, those cases in which requests were granted were ones in which the service member was imminently approaching retirement or other voluntary separation from the service. Secretary Wormuth testified before the House Armed Services Committee that the vast majority, if not all, of the approved religious accommodation requests were for those Soldiers who were in the process of leaving the Army.[7]

43.     As of September 16, 2022, 97% of Active Army personnel have been fully vaccinated against COVID-19.[8]

44.     The United States Army has spent an extraordinary amount of money to provide training to Plaintiff. The monetary costs of training replacement personnel to replace those forced out due to this policy will run into the hundreds of millions of dollars. In 2011, the United States Government Accountability Office ("GAO") published a comprehensive report analyzing the costs associated with separating 3,664 trained service members in the context of subsequently revoked Department of Defense policies and found the costs to be substantial.

According to GAO's analysis of Defense Manpower Data Center data, 3,664 servicemembers were separated under DOD's homosexual conduct policy from

---

[6] *See Department of the Army updates Total Army COVID-19 vaccination statistics*, U.S. Army Public Affairs (Sept. 16, 2022), https://tinyurl.com/ArmySeptStats (hereafter "Army Sept. Stats").
[7] Testimony of Secretary of the Army Christine Wormuth before the House Armed Services Committee on May 12, 2022, https://tinyurl.com/WormuthTestimony.
[8] *See* Army Sept. Stats.

> fiscal years 2004 through 2009. . . Using available DOD cost data, GAO calculated that it cost DOD about $193.3 million ($52,800 per separation) in constant fiscal year 2009 dollars to separate and replace the 3,664 servicemembers separated under the homosexual conduct policy. This $193.3 million comprises $185.6 million in replacement costs and $7.7 million in administrative costs. The cost to recruit and train replacements amounted to about $185.6 million.[9]

The numbers being reported for religious service members unwilling to receive the vaccine are many multiples greater than those lost to this prior policy and will ultimately cost far more.

45.     Plaintiff is in excellent physical condition. He is statistically unlikely to suffer significant consequences or hospitalization from contracting COVID-19 again.

46.     Plaintiff has already had and recovered from COVID-19. He was not hospitalized. He possesses natural immunity as a result, as described more fully below.

47.     During the course of the pandemic, Plaintiff has practiced social distancing, frequent handwashing, masking, regular COVID-19 testing, and/or working remotely as directed by his commanders.

48.     Plaintiff has and can continue to perform his work at the highest level while practicing a combination of social distancing, frequent handwashing, masking, regular COVID-19 testing, and/or working remotely, depending on his duties.

49.     Thousands of Army service members with approved medical or administrative accommodations are being permitted to work in person and perform their duties without facing adverse employment consequences, involuntary separation from the Army, or early retirement.

---

[9] Government Accountability Office, *Military Personnel: Personnel and Cost Data Associated with Implementing DoD's Homosexual Conduct Policy* (Jan. 2011), https://www.gao.gov/assets/gao-11-170.pdf.

**Plaintiff's Sincerely Held Religious Objections to COVID-19 Vaccination**

50.     Plaintiff objects to receiving a COVID-19 vaccination based on his sincerely held religious beliefs.

51.     Plaintiff is a committed member of the Baptist denomination of the Christian faith.

52.     Plaintiff's sincerely held religious beliefs forbid him from receiving the COVID-19 vaccine for a variety of reasons based upon his Christian faith as revealed through scripture and prayer. A true and correct copy of Plaintiff's Religious Accommodation Requests and Appeals are attached hereto as Exhibit E to this Complaint.

53.     Plaintiff holds the sincere religious belief that all life is sacred, from conception to natural death, and that abortion is the impermissible taking of an innocent life in the womb. Plaintiff is actively involved in pro-life and crisis pregnancy service work at his church.

54.     As a result of his sincerely held religious beliefs regarding life and abortion, Plaintiff is unable to receive any of the currently available COVID-19 vaccines due to what he believes and understands is a connection between these vaccines and their testing, development, or production using aborted fetal cell lines.

55.     Plaintiff believes that receiving a COVID-19 vaccine that was tested, developed, or produced using aborted fetal cell lines would force him to violate his sincerely held religious beliefs by causing him to participate in the abortion enterprise, which he believes to be immoral and repugnant to God.[10]

---

[10] *See, e.g.*, Annette B. Vogel et al., *BNT162b Vaccines Protect Rhesus Macaques from SARS-Cov-2*, NATURE (Feb. 1, 2021), https://www.nature.com/articles/s41586021-03275-y (explaining that the BNT162b vaccines (the Pfizer/BioNTech vaccine also known as Comirnaty) were tested using HEK293T aborted fetal cells); Meeting of the Vaccines and Related Biological Products Advisory Committee, U.S. Food and Drug Administration (May 2016, 2001) (Statement of Dr. Alex van der Eb, emeritus professor at the University of Leiden) ("The fetus [from whom the HEK 293 cell lines were acquired], as far as I can remember was completely normal. Nothing was

56. Plaintiff, prior to learning about the production or testing of the COVID-19 vaccines using aborted fetal cell lines, was unaware that such cell lines were used in the production or testing of any medications or vaccines. Plaintiff, having learned that other medications may be tested or produced using aborted fetal cell lines, has since committed to refuse to take any medication that is thus developed or tested.

57. Plaintiff holds to the sincere religious belief that the human body is God's temple, and that he must not put anything into his body that God has forbidden.

58. The COVID-19 vaccines use mRNA technology, which causes human cells to produce a spike protein they would not normally produce.[11] Despite repeated denials by the Centers for Disease Control that the COVID-19 vaccines could alter a person's DNA, a recently published, peer-reviewed study out of Sweden "showed that SARS-CoV-2 RNA can be reverse-transcribed and integrated into the genome of human cells."[12]

59. Plaintiff believes that he is a steward of his body's health. The COVID-19 vaccine has resulted in a statistically significant number of serious adverse reactions, including myocarditis, a potentially fatal inflammation of the heart muscles, and pericarditis, a potentially fatal inflammation of the heart tissue.[13]

---

wrong. The reasons for the abortion were unknown to me. I probably knew it at the time, but it got lost, all this information.").

[11] *See* Center for Disease Control, "Understanding mRNA COVID-19 Vaccines," http://www.cdc.gov/coronavirus/2019-ncov/vaccines/different-vaccines/mrna.html (Mar. 4, 2021).

[12] Markus Alden *et al.*, *Intracellular Reverse Transcription of Pfizer BioNTech COVID-19 mRNA Vaccine BNT162b2 in vitro in Human Liver Cell Line*, Current Issues in Molecular Biology 2022, 44(3), 1115-1126, (Feb. 25, 2022), https://doi.org/10.3390/cimb44030073.

[13] *See* Patricia Kime, *DoD Confirms: Rare Heart Inflammation Cases Linked to COVID-19 Vaccines*, Military.com (June 30, 2021), https://www.military.com/daily-news/2021/06/30/dod-confirms-rare-heart-inflammation-cases-linked-covid-19-vaccines.html.

60. On January 24, 2022, a United States Senate subcommittee held a roundtable on the efficacy, safety, and overall response to COVID-19. At that roundtable, an attorney representing three Department of Defense whistleblowers, Thomas Renz, "revealed disturbing information regarding dramatic increases in medical diagnoses among military personnel."[14] Military whistleblowers alleged that based on data from the Defense Medical Epidemiology Database ("DMED"), there has been "a significant increase in registered diagnoses . . . for miscarriages, cancer, and many other medical conditions in 2021 compared to a five-year average from 2016-2020," including a 472% increase in "female infertility" and a 437% increase in "ovarian dysfunction."[15]

61. U.S. Army Lieutenant Colonel (LTC) Theresa Long, M.D., M.P.H., F.S., submitted a sworn affidavit, under penalty of perjury, as a whistleblower under the Military Whistleblower Protection Act, 10 U.S.C. §1034, in support of a Motion for Preliminary Injunction in *Robert, et al. v. Austin, et al.*, 1:21-cv-02228-RM-STV (D. Colo., filed Aug. 17, 2021).

62. In her affidavit, LTC Long expressed her expert opinion that:

> None of the ordered Emergency Use COVID-19 vaccines can or will provide better immunity than an infection-recovered person…
> All three of the [Emergency Use Authorization] EUA COVID-19 vaccines (Comirnaty is not available)…are more risky, harmful, and dangerous than having no vaccine at all, whether a person is COVID-recovered or facing a COVID infection…
> Direct evidence exists and suggests that all persons who have received a COVID-19 vaccine are damaged in their cardiovascular system in an irreparable and irrevocable manner.

---

[14] Letter from Senator Ron Johnson to Secretary of Defense Lloyd Austin (Feb. 1, 2022) available at https://www.ronjohnson.senate.gov/services/files/FB6DDD42-4755-4FDC-BEE9-50E402911E02.

[15] *Id.*

63. LTC Long does not hold an isolated opinion. In a sworn declaration, Dr. Jayanta Bhattacharya and Dr. Martin Kulldoff, professors of medicine at Stanford University and Harvard Medical School, respectively, expressed similar conclusions.[16] Dr. Hooman Noorchashm, M.D., Ph.D.—who is well-published in the medical field and has held multiple prestigious faculty appointments—reached a similar conclusion in his own sworn declaration. He concluded that "[a] series of epidemiological studies have demonstrated to a reasonable degree of medical certainty that natural immunity following infection and recovery from the SARS-CoV-2 virus provides robust and durable protection against reinfection, at levels equal to or better than the most effective vaccines currently available."[17]

64. Plaintiff has contracted and recovered from COVID-19 and has natural immunity.

65. Plaintiff holds the sincere religious belief that, upon seeking guidance from God through prayer as to whether to receive a COVID-19 vaccine, God directed him not to do so.

66. Fidelity to his religious beliefs is more important to Plaintiff than his military career, but the Constitution of the United States prohibits Defendants from forcing him to choose between his beliefs and his military service to our country.

67. The DoD Vaccine Mandate has lowered Plaintiff's morale because he has been forced to choose between his sincerely held religious beliefs and his military career. The DoD Vaccine Mandate has lowered the morale of other service members for the same reasons.

---

[16] *Zywicki v. Washington*, 1:21-cv-00894-AJT-MSN (E.D. Va., filed Aug. 3, 2021).
[17] *Id.*

**DoD and Army Regulations Recognize Religious and Medical Accommodations**

**for Immunizations under RFRA and the Free Exercise Clause Generally**

68.     Department of Defense Instructions 1300.7, Religious Liberty in the Military Services, dated September 1, 2020, establishes DoD policy in furtherance of RFRA and the Free Exercise Clause of the First Amendment to the Constitution of the United States, recognizing that service members have the right to observe the tenets of their religion or to observe no religion at all.

69.     DODI 1300.17 provides that it is DoD policy that "Service members have the right to observe the tenets of their religion or to observe no religion at all, as provided in this issuance."

70.     DODI 1300.17 provides that "[i]n accordance with Section 533(a)(1) of Public Law 112-239, as amended, the DoD Components will accommodate individual expressions of sincerely held beliefs (conscience, moral principles, or religious beliefs) which do not have an adverse impact on military readiness, unit cohesion, good order and discipline, or health and safety. A service member's expression of such beliefs may not, in so far as practicable, be used as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training, and assignment."

71.     DODI 1300.17 provides that "[a]ccommodation includes excusing a Service member from an otherwise applicable military policy, practice, or duty. In accordance with RFRA, if such a military policy, practice, or duty substantially burdens a Service member's exercise of religion, accommodation can only be denied if:

(1)     The military policy, practice, or duty is in furtherance of a compelling governmental interest; and

(2)     It is the least restrictive means of furthering that compelling governmental interest."

72.     Department of Army Instruction ("DAFI") 52-201, ¶ 1.3, states: "A member's expression of sincerely held beliefs may not be used as the basis for any adverse personnel action, discrimination, or denial of promotion; and may not be used as a basis for making schooling, training, or assignment decisions."

**Defendants' Refusal to Grant Religious Accommodation Exemptions**

73.     Plaintiff is requesting religious accommodations or exemptions from Defendants' vaccine mandates that set forth Plaintiff's sincerely held religious beliefs regarding the COVID-19 vaccines.

74.     Defendants have implemented a system of processing religious accommodation requests whereby all, or virtually all, such requests are denied without being considered individually.

75.     On information and belief, Defendants' communications with service members rejecting their religious accommodation requests have used identical, pre-written, "boilerplate" language to deny their requests. The letters did not reflect the consideration of any of the specific circumstances of individual service members. The letters did not include any explanation of why the individual circumstances of each service member warranted rejection.

76.     Plaintiff's appeal has been denied. As a result, his involuntary separation from the Army is imminent, absent injunctive relief from this Court.

77.     Plaintiff believes that his request has been rejected without any consideration of the specific information included in his religious accommodation request.

78. All of the rejection letters received by service members rely on the falsified assumption that receiving a vaccination prevents a person from acquiring or spreading COVID-19. The assumption that receiving a vaccination prevents a person from acquiring or spreading COVID-19 has been proven false. This was publicly acknowledged by the CDC in January 2022.[18]

**Defendants' Punishment of Plaintiff for Merely Filing a Religious Accommodation Request**

79. The uncertainty about his future, constant questions from peers, and denials of training, travel, leadership, and deployment opportunities have already been detrimental to Plaintiff's career. For example, Master Sergeant Galey's entire unit traveled to Hawaii on training in October 2021, and to Alaska in March 2022, but he was not allowed to attend and he has not been allowed to attend any schools while his religious accommodation request was still pending.

80. This adverse workplace treatment for merely requesting a religious exemption amounts to punishment for asserting one's religious beliefs. Like the termination that Plaintiff faces, it is also a punishment that violates both RFRA and the Free Exercise Clause of the First Amendment.

**Defendants' Patently Unconstitutional Policies and Practice have been Enjoined by Courts Across the Country for Navy, Air Force, and Marine Service Members, But Not the Army**

81. Defendants' policies and practices have been challenged in multiple federal district courts which have ruled in favor of service members and taken a dim view of the Defendants'

---

[18] *See* Eric Sykes, "CDC Director: COVID Vaccines Can't Prevent Transmission Anymore," MSN (Jan. 10, 2022), https://tinyurl.com/CDCTransmit.

claims. At this point in time, service members in the Navy,[19] Air Force,[20] and Marine Corps[21] have all been class certified and protected from involuntary separation through the grant of preliminary injunctions.

82.     The Northern District of Texas granted a request for a preliminary injunction in a COVID-19 vaccine mandate challenge by religious Navy SEALs, noting that adverse actions against those servicemembers substantially burdened their religious beliefs and that the military's purported compelling interest clearly failed to overcome this substantial burden. In granting a preliminary injunction, the Court noted,

> Our nation asks the men and women in our military to serve, suffer, and sacrifice. But we do not ask them to lay aside their citizenry and give up the very rights they have sworn to protect . . . [the service members] in this case seek to vindicate the very freedoms they have sacrificed so much to protect. The COVID-19 pandemic provides the government no license to abrogate those freedoms. There is no COVID-19 exception to the First Amendment. There is no military exclusion from our Constitution.[22]

83.     The Middle District of Florida granted a preliminary injunction in favor of two servicemembers threatened with separation, noting in its Order for a preliminary injunction,

> The record in this action establishes that the two service members are very likely to prevail on their claim that their respective branch of the military has wrongfully denied a religious exemption from COVID-19 vaccination. The record creates a strong inference that the services are discriminatorily and systematically denying religious exemptions without a meaningful and fair hearing and without the showing required under RFRA (while simultaneously granting medical exemptions and permitting unvaccinated persons to continue in service without adverse consequence). One struggles to imagine a wholesome and lawful explanation for the results evidenced in this record. The military is well aware of the frailty of their

---

[19] *Usn Seals 1-26 v. Biden*, 578 F. Supp. 3d 822 (N.D. Tex. 2022); Seals v. Austin, 594 F. Supp. 3d 767 (N.D. Tex. 2022).
[20] *Doster v. Kendall*, No. 22-3497/3702, 2022 U.S. App. LEXIS 32847 (6th Cir. Nov. 29, 2022).
[21] *Colonel Fin. Mgmt. Officer v. Austin*, No. 8:22-cv-1275-SDM-TGW, 2022 U.S. Dist. LEXIS 153590 (M.D. Fla. Aug. 18, 2022).
[22] *U.S. Navy Seals 1–26, et al v. Biden*, Civil Action No. 4:21-cv-01236-O, 2022 U.S. Dist. LEXIS 2268, at *2-3 (N.D. Tex. Jan. 3, 2022) (internal citations omitted).

arguments          in          defense          of          their          practices.[23]

84.  In *Doster v. Kendall*, the District of Ohio granted a preliminary injunction and later

a class certification protecting members of the Air Force from separation.[24] In granting the

injunction, the Court noted:

> For centuries now, people have come to this country from every corner of the
> world to share in the blessing of religious freedom. Our Constitution promises
> that they may worship in their own way, without fear of penalty or danger, and
> that in itself is a momentous offering. That momentous offering clearly is in great
> peril as to Plaintiffs herein.

*Id.* (internal citation omitted).

85.  Indistinguishable from these other cases, Defendants' vaccine mandates imperil

Plaintiff's Constitutional and statutorily protected rights in precisely the same way. The lack of

protection for Plaintiff and other members of the U.S. Army while service members of other

branches have their religious liberty protected defies basic fairness.

## FIRST CAUSE OF ACTION

### Violation of Plaintiff's Rights under the

### Religious Freedom Restoration Act 42 U.S.C. § 2000bb et seq.

86.  Plaintiff repeats and re-alleges each of the allegations contained in the foregoing

paragraphs of this Complaint.

87.  The Religious Freedom Restoration Act of 1993, 42 U.S.C. § 2000b et seq.

("RFRA"), states that the "[g]overnment shall not substantially burden a person's exercise of

religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1.

---

[23] *Navy Seal 1 v. Biden*, No. 8:21-cv-2429-SDM-TGW, 2022 U.S. Dist. LEXIS 29716, at *15 (M.D. Fla. Feb. 2, 2022).
[24] *Doster v. Kendall*, No. 1:22-cv-84, 2022 U.S. Dist. LEXIS 59381, at *2-3 (S.D. Ohio Mar. 31, 2022).

88.     RFRA broadly defines the "exercise of religion" to include "any exercise of religion, whether or not compelled by, or central to, a system of religious belief." 42 U.S.C. § 2000bb-2(4) (citing 42 U.S.C. § 2000cc-5(7)(A)).

89.     In *Burwell v. Hobby Lobby Stores*, the Supreme Court stated that the exercise of religion involves "not only belief and profession but the performance of (or abstention from) physical acts that are engaged in for religious reasons." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 710 (2014) (internal citation omitted).

90.     The Supreme Court has articulated repeatedly that courts may not question whether sincerely held religious beliefs are reasonable. *Hobby Lobby*, 573 U.S. at 724.

91.     The Supreme Court of the United States has held that no state official may second-guess whether a person's sincerely held religious beliefs are correct, reasonable, or sufficiently based in relevant scripture. Doing so impermissibly entangles the state official with religion, in violation of the Establishment Clause of the First Amendment of the Constitution of the United States. *See Jimmy Swaggart Ministries v. Bd. of Equalization*, 493 U.S. 378, 396, (1990).

92.     RFRA imposes strict scrutiny on all actions of the federal government that "substantially burden a person's exercise of religion." 42 U.S.C. § 2000bb-1(b).

**Application of Strict Scrutiny**

93.     Defendants' vaccine mandates fail strict scrutiny.

94.     Unless the government satisfies the compelling interest test by "demonstrat[ing] that [the] application of the burden to the person – (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest," 42 U.S.C. § 2000bb-1(b), the governmental act violates RFRA.

95. Plaintiff has sincerely held religious beliefs that he cannot receive the mandated COVID-19 vaccine.

96. Defendants' vaccine mandates substantially burden Plaintiff's sincerely held religious beliefs by requiring him to take an action – injecting a COVID-19 vaccine into his body – that would violate those religious beliefs or suffer adverse employment action, financial harm, and potential physical harm.

97. A person's exercise of religion is substantially burdened whenever a measure imposes substantial pressure on the person to modify his or his behavior and to violate his or her beliefs.

98. The DoD Vaccine mandate imposes on Plaintiff the choice between violating his religious beliefs and ending his military career and livelihood.

99. The adverse actions to which Plaintiff is subject may include: involuntary discharge, court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership position, removal from promotion lists, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of money spent training the service member, and loss of leave and travel privileges for both official and unofficial purposes.

100. Plaintiff has already suffered and continues to suffer adverse employment actions merely for requesting relief that is protected by RFRA.

101. Defendants do not have a compelling government interest in refusing to grant religious exemptions and requiring Plaintiff to violate his sincerely held religious beliefs by taking a COVID-19 vaccine.

102.    Defendants do not have a compelling government interest in refusing to grant religious exceptions to the DoD Vaccine mandate when they have granted thousands of medical and administrative exemptions to the DoD Vaccine mandate.

103.    Allowing thousands of accommodations across the services for reasons other than religious ones demonstrates that Defendants can tolerate the risk posed by some service members remaining unvaccinated — and that Defendants are treating religious members of the military differently — in defiance of RFRA and the First Amendment.

104.    Defendants' delay in imposing the DoD Vaccine mandate for more than a year after vaccines were widely available also belies any claim that their interest in enforcing the Mandate is compelling.

105.    Defendants do not have a compelling government interest in refusing to offer religious exemptions to the COVID-19 vaccine mandates when the government itself has admitted through the CDC that vaccinated individuals can still spread COVID-19.

106.    Defendants may not rely on generalized or broadly formulated interests to satisfy the compelling interest test.

107.    Defendants must establish that they have a compelling interest in denying each individual service member an accommodation. Asserting a compelling interest in maximizing the vaccination of Army personnel does not satisfy the compelling interest test.

108.    The letters denying personnel their religious accommodation requests are conclusory and cite only generalized interests in maximizing the vaccination of Army personnel.

109.    Defendants' vaccine mandates are also not the least restrictive means of accomplishing the government's purported interest because the DoD has operated for well over

two years during the COVID-19 pandemic with a ready and healthy force that had not been fully vaccinated.

110.    Defendants possess multiple less restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and regular COVID-19 testing. These methods are already being used to facilitate Plaintiff's performance of his duties now. Defendants could also accept positive tests for COVID-19 antibodies (indicating the presence of natural immunity) as a substitute for a COVID-19 vaccination. All of these approaches constitute less restrictive means.

111.    Indeed, if Defendants are concerned about COVID-19 affecting their personnel, it would need to implement these other mitigation protocols *even if* service members receive the vaccine because, as is well known by now, vaccinated personnel can also carry, transmit, and become sick with COVID-19.[25]

112.    Defendants' denials of Plaintiff's religious accommodation request fails to provide any explanation of why Plaintiff cannot continue to fulfill his duties in the manner he has done since the COVID-19 pandemic began through masking, remote teleworking, physical distancing, and regular testing.

113.    Requiring the vaccination of a service member who possesses natural immunity, as Plaintiff does, does nothing to reduce the risk of COVID-19 infection to other service members.

114.    RFRA requires that Defendants grant an accommodation in every case where denying one does not pass strict scrutiny.

115.    Because of Defendants' policy and actions, Plaintiff has suffered, and will continue to suffer, irreparable harm. Plaintiff is entitled to equitable relief.

---

[25] *See* CDC Immunity Brief.

116.    Plaintiff is entitled to a declaration that Defendants violated his rights under RFRA to freely exercise his religion and an injunction against Defendants' policy and actions. Plaintiff is also entitled to the reasonable costs of this lawsuit, including reasonable attorneys' fees.

## SECOND CAUSE OF ACTION

### Violation of Plaintiff's First Amendment Right to the Free Exercise of Religion

117.    Plaintiff repeats and re-alleges each of the allegations contained in the foregoing paragraphs of this Complaint.

118.    The First Amendment's Free Exercise Clause prohibits the government from enacting non-neutral and non-generally applicable laws or policies unless they are narrowly tailored to achieve a compelling government interest.

119.    The original public meaning of the Free Exercise Clause is that the government may not burden a sincerely held religious belief unless the government can demonstrate a compelling interest and that the law or policy burdening religious exercise is the least restrictive means to achieve that compelling interest.

120.    Plaintiff has sincerely held religious beliefs that prohibit his receipt of presently-available COVID-19 vaccines.

121.    Defendants' vaccine mandates substantially burden Plaintiff's sincerely held religious belief by requiring him to take an action (receiving a COVID-19 vaccine injection) that would violate those religious beliefs or suffer adverse employment action and financial harm.

122.    The adverse actions to which Plaintiff is subject may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists, inability to attend certain military training and education schools, loss of

special pay, placement in a non-deployable status, recoupment of money spent training the service member, loss of leave and travel privileges for both official and unofficial purposes.

123.    Defendants' vaccine mandates are not a neutral and generally applicable law or policy. The policy vests DoD and Army decisionmakers with the discretion to exempt service members from the mandates for medical reasons and to exempt service members already participating in COVID-19 vaccine trials, regardless of whether those medical trials provide those service members with any protection from infection or serious illness from COVID-19.

124.    Defendants' vaccine mandates fail strict scrutiny.

125.    Defendants do not have a compelling government interest in requiring Plaintiff to violate his sincerely held religious beliefs by taking a COVID-19 vaccine.

126.    Defendants' vaccine mandates are also not the least restrictive means of accomplishing the government's purported interest because DoD operated for well over a year during the COVID-19 pandemic with a ready and healthy force that had not been fully vaccinated.

127.    Moreover, Defendants possess multiple lesser restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and regular testing.

128.    Indeed, Defendants will need to implement these other mitigation protocols even if service members receive the vaccine, because vaccinated personnel can also carry, transmit, and become sick with COVID-19.[26]

129.    Accordingly, Defendants' vaccine mandates violate Plaintiff's right to the free exercise of religion under the First Amendment.

---

[26] Centers for Disease Control and Prevention, "Science Brief: COVID-19 Vaccines and Vaccinations," (Sept. 15, 2021), https://www.cdc.gov/coronavirus/2019-ncov/science/science-briefs/fully-vaccinated-people.html.

130.    Because of Defendants' policy and actions, Plaintiff has suffered and continue to suffer irreparable harm, and is entitled to equitable relief.

131.    Plaintiff is entitled to a declaration that Defendants violated their First Amendment rights to free exercise of religion and an injunction against Defendants' policy and actions. Additionally, Plaintiff is entitled to the reasonable costs of this lawsuit, including reasonable attorneys' fees.

### THIRD CAUSE OF ACTION

### Violation of Plaintiff's Rights Under the Administrative Procedure Act

132.    Plaintiff repeats and re-alleges each of the allegations contained in the foregoing paragraphs of this Complaint.

133.    Defendants are "agencies" under the APA, 5 U.S.C. § 551(1), the vaccine mandates complained of herein are each a "rule" under the APA, id. § 551(4), and Defendants' actions complained of herein are "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court," id. § 704.

134.    The APA prohibits agency actions that are "not in accordance with law." 5 U.S.C. § 706(2)(A). The vaccine mandates, as applied to Plaintiff, are not in accordance with law.

135.    RFRA states that the "[g]overnment shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1.

136.    DODI 1300.17 and SECNAVINST 1730.8B explicitly recognize RFRA protections for Department of Defense and Department of the Army Service members.

137.    Unless the agency satisfies the compelling interest test by "demonstrat[ing] that [the] application of the burden to the person—(1) is in furtherance of a compelling governmental

interest; and (2) is the least restrictive means of furthering that compelling governmental interest," 42 U.S.C. § 2000bb-1(b), the agency action violates RFRA.

138.    The APA prohibits agency actions that are "contrary to constitutional right." 5 U.S.C. § 706(2)(B). The vaccine mandates, as applied to Plaintiff, are contrary to his constitutional rights under the Free Exercise Clause of the First Amendment.

139.    The First Amendment's Free Exercise Clause prohibits the government from enacting non-neutral and non-generally applicable laws or policies unless they are narrowly tailored to a compelling government interest.

140.    The APA prohibits agency actions that are "arbitrary, capricious, [or] an abuse of discretion." 5 U.S.C. § 706(2)(A). The Vaccine mandate and Defendants' actions implementing the Vaccine mandate are arbitrary, capricious, and an abuse of discretion for several reasons.

141.    BUMEDINST 6230.15B, Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases, dated October 7, 2013, establishes DoD-wide policy and quality standards for immunization and chemoprophylaxis.

142.    BUMEDINST 6230.15B, Paragraph 2-6 provides for two types of exemptions from DoD immunization requirements: medical and administrative.

143.    Among the numerous medical exemptions available to service members, "evidence of immunity based on serologic tests, documented infection, or similar circumstances" provides a basis for medical exemption.

144.    BUPERSINST 1730.11A provides that "[e]ach request for religious accommodation must be reviewed on a case-by-case basis, giving consideration to the full range of facts and circumstances relevant to the specific request. Requests to accommodate religious

practices should not be approved or denied simply because similar requests were approved or denied."

145.    Defendants' vaccine mandates substantially burden Plaintiff's sincerely held religious beliefs by requiring him to take an action (receiving a COVID-19 vaccine injection) that would violate those religious beliefs or suffer adverse employment action and financial harm.

146.    The adverse actions to which Plaintiff is subject may include: court-martial (criminal) prosecution, involuntary separation, relief for cause from leadership positions, removal from promotion lists, inability to attend certain military training and education schools, loss of special pay, placement in a non-deployable status, recoupment of money spent training the service member, loss of leave and travel privileges for both official and unofficial purposes.

147.    Defendants do not have a compelling government interest in requiring Plaintiff to violate his sincerely held religious beliefs by taking a COVID-19 vaccine.

148.    Defendants' vaccine mandates are also not the least restrictive means of accomplishing the government's purported interest because DoD operated for over a year during the COVID-19 pandemic with a ready and healthy force that had not been fully vaccinated.

149.    Moreover, Defendants possess multiple lesser restrictive methods of mitigating the spread of COVID-19, including masking, remote teleworking, physical distancing, and regular testing.

150.    For the reasons discussed above, the vaccine mandates are not in accordance with law within the meaning of 5 U.S.C. § 706(2)(A) as they violate Plaintiff's rights under RFRA.

151.    For the reasons discussed above, the vaccine mandates exceed statutory authority within the meaning of 5 U.S.C. § 706(2)(C) as they violate Plaintiff's rights under the First Amendment.

152.    By exempting service members from the mandates for medical reasons and exempting service members participating in COVID-19 vaccine trials, regardless of whether those medical trials provide those service members with any protection from infection or serious illness from COVID-19, while refusing to provide similar exemptions for service members who request exemptions for religious reasons, Defendants have acted in a manner that is arbitrary, capricious, and an abuse of discretion within the meaning of 5 U.S.C. § 706(2)(A).

153.    Plaintiff has no adequate or available administrative remedy, or, in the alternative, any effort to obtain an administrative remedy would be futile.

154.    Plaintiff has no adequate remedy at law.

155.    Absent injunctive and declaratory relief against the vaccine mandates, Plaintiff will have been and continues to be harmed.

156.    The Court should declare the vaccine mandates and each of the Defendants' decisions invalid and set them aside.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment against Defendants and provide Plaintiff with the following relief:

(A)    A declaratory judgment that Defendants' vaccination policies challenged in this Complaint violate Plaintiff's rights under the First Amendment to the United States Constitution;

(B)    A declaratory judgment that Defendants' vaccination policies challenged in this Complaint violate Plaintiff's rights under the Administrative Procedure Act;

(D)     A preliminary and permanent injunction prohibiting the Defendants, their agents, officials, servants, employees, and any other persons acting on their behalf from enforcing the vaccination policies challenged in this Complaint;

(E)     An order declaring unlawful and setting aside Defendants' vaccination policies;

(F)     Plaintiff's reasonable attorneys' fees, costs, and other costs and disbursements in this action pursuant to 42 U.S.C. § 1988; and

(G)     All other further relief to which Plaintiff may be entitled.

Respectfully submitted this 19th day of December 2022.

/s/ _____
James Baehr (LSBA 35431)
Sarah Harbison (LSBA 31948)
PELICAN CENTER FOR JUSTICE
PELICAN INSTITUTE FOR PUBLIC POLICY
400 Poydras Street, Suite 900
New Orleans, LA 70130
Telephone: (504) 475-8407
james@pelicaninstitute.org
sarah@pelicaninstitute.org
Attorneys for Plaintiff