# Exhibit A



**SECRETARY OF DEFENSE**
**1000 DEFENSE PENTAGON**
**WASHINGTON, DC 20301-1000**

AUG 2 4 2021

MEMORANDUM FOR SENIOR PENTAGON LEADERSHIP
                    COMMANDERS OF THE COMBATANT COMMANDS
                    DEFENSE AGENCY AND DOD FIELD ACTIVITY DIRECTORS

SUBJECT:  Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense
               Service Members

       To defend this Nation, we need a healthy and ready force. After careful consultation with medical experts and military leadership, and with the support of the President, I have determined that mandatory vaccination against coronavirus disease 2019 (COVID-19) is necessary to protect the Force and defend the American people.

       Mandatory vaccinations are familiar to all of our Service members, and mission-critical inoculation is almost as old as the U.S. military itself. Our administration of safe, effective COVID-19 vaccines has produced admirable results to date, and I know the Department of Defense will come together to finish the job, with urgency, professionalism, and compassion.

       I therefore direct the Secretaries of the Military Departments to immediately begin full vaccination of all members of the Armed Forces under DoD authority on active duty or in the Ready Reserve, including the National Guard, who are not fully vaccinated against COVID-19.

       Service members are considered fully vaccinated two weeks after completing the second dose of a two-dose COVID-19 vaccine or two weeks after receiving a single dose of a one-dose vaccine. Those with previous COVID-19 infection are not considered fully vaccinated.

       Mandatory vaccination against COVID-19 will only use COVID-19 vaccines that receive full licensure from the Food and Drug Administration (FDA), in accordance with FDA-approved labeling and guidance. Service members voluntarily immunized with a COVID-19 vaccine under FDA Emergency Use Authorization or World Health Organization Emergency Use Listing in accordance with applicable dose requirements prior to, or after, the establishment of this policy are considered fully vaccinated. Service members who are actively participating in COVID-19 clinical trials are exempted from mandatory vaccination against COVID-19 until the trial is complete in order to avoid invalidating such clinical trial results.

       Mandatory vaccination requirements will be implemented consistent with DoD Instruction 6205.02, "DoD Immunization Program," July 23, 2019. The Military Departments should use existing policies and procedures to manage mandatory vaccination of Service members to the extent practicable. Mandatory vaccination of Service members will be subject to any identified contraindications and any administrative or other exemptions established in Military Department policy. The Military Departments may promulgate appropriate guidance to carry out the requirements set out above. The Under Secretary of Defense for Personnel and



OSD007764-21/CMD010116-21

Readiness may provide additional guidance to implement and comply with FDA requirements or Centers for Disease Control and Prevention recommendations.

The Secretaries of the Military Departments should impose ambitious timelines for implementation. Military Departments will report regularly on vaccination completion using established systems for other mandatory vaccine reporting.

Our vaccination of the Force will save lives. Thank you for your focus on this critical mission.

# Exhibit B

UNCLASSIFIED

FRAGO 5 TO HQDA EXORD 225-21 COVID-19 STEADY STATE OPERATIONS

ATTACHMENT:
[ADD] ANNEX J - PUBLIC AFFAIRS GUIDANCE. (TBD)
[ADD] ANNEX GG – MEDICAL MATERIAL QUALITY CONTROL MESSAGE, MMQC-21-1463, PFIZER LICENSE AND SHELF LIFE EXTENSION, 24 AUGUST 2021.
[ADD] ANNEX HH - MEDICAL MATERIAL QUALITY CONTROL MESSAGE, MMQC-21-1425, UPDATED COVID-19 VACCINE ORDERING GUIDELINES, 09 AUGUST 2021.
[ADD] ANNEX II - MMQC 21 1454 ADDITIONAL DOSE OF COVID 19 VACCINE FOR IMMUNOCOMPROMISED PERSONS, 13 AUGUST 2021.
[ADD] ANNEX JJ – UPDATED PFIZER FACT SHEET FOR HEALTHCARE PROVIDERS, 24 AUGUST 2021.
[ADD] ANNEX KK – UPDATED PFIZER FACT SHEETS FOR PATIENTS AND CAREGIVERS, 24 AUGUST 2021.
[ADD] ANNEX LL – TBD
[ADD] ANNEX MM – TBD
[ADD] ANNEX NN – SAMPLE DA FORM 4856 FOR ENLISTED VACCINE REFUSALS.
[ADD] ANNEX OO – SAMPLE DA FORM 4856 FOR OFFICER VACCINE REFUSALS.

Originator: DA WASHINGTON DC

DTG: XXXXXXXXXXX Precedence: P DAC: Gener
To: ARLINGTON NATIONAL CEMETERY ARLINGTON VA, ARNG NGB COMOPS ARLINGTON VA, ARNG NGB J3 JOC WASHINGTON DC, ARNGRC ARLINGTON VA, ARNGRC WATCH ARLINGTON VA, CDR 5 ARMY NORTH AOC FT SAM HOUSTON TX, CDR ARMY FUTURES COMMAND AUSTIN TX, CDR ATEC ABERDEEN PROVING GROUND MD, CDR FORSCOM DCS G3 CENTRAL TASKING DIV FT BRAGG NC, CDR FORSCOM DCS G3 CURRENT OPS FT BRAGG NC, CDR FORSCOM DCS G3 CURRENT OPS FT BRAGG NC, CDR FORSCOM DCS G3 WATCH OFFICER FT BRAGG NC, CDR FORSCOM DCS G3 WATCH OFFICER FT BRAGG NC, CDR MDW J3 FT MCNAIR DC, CDR MDW JFHQ-NCR FT MCNAIR DC, CDR NETCOM 9THSC FT HUACHUCA AZ, CDR TRADOC CG FT EUSTIS VA, CDR TRADOC DCS G-3-5-7 OPNS CTR FT EUSTIS VA, CDR USAR NORTH FT SAM HOUSTON TX, CDR USARCENT SHAW AFB SC, CDR USAREUR WIESBADEN GE, CDR USASOC COMMAND CENTER FT BRAGG NC, CDR USASOC FT BRAGG NC, CDR USASOC MESSAGE CENTER FT BRAGG NC, CDR3RD ARMY USARCENT WATCH OFFICER SHAW AFB SC, CDRAMC REDSTONE ARSENAL AL, CDRFORSCOM FT BRAGG NC, CDRHRC G3 DCSOPS FT KNOX KY, CDRINSCOM FT BELVOIR VA, CDRINSCOMIOC FT BELVOIR VA, CDRMDW WASHINGTON DC, CDRUSACE WASHINGTON DC, CDRUSACIDC FT BELVOIR VA, CDRUSACYBER FT BELVOIR VA, CDRUSACYBER G3 FT BELVOIR VA, CDRUSACYBER G33 FT BELVOIR VA, CDRUSAEIGHT G3 CUROPS SEOUL KOR, CDRUSAEIGHT SEOUL KOR, CDRUSAFRICA VICENZA IT, CDRUSAMEDCOM FT SAM HOUSTON TX, CDRUSARC G33 READ FT BRAGG NC, CDRUSARCYBER WATCH OFFICER FT BELVOIR VA, CDRUSARPAC G3 FT SHAFTER HI, CDRUSARPAC FT SHAFTER HI, COMDT USAWC CARLISLE BARRACKS PA, HQ IMCOM FT SAM HOUSTON TX, HQ INSCOM IOC FT BELVOIR VA, HQ SDDC CMD GROUP SCOTT AFB IL, HQ SDDC OPS MSG CNTR SCOTT AFB IL, HQ USARSO FT SAM HOUSTON TX, HQ USARSO G3 FT SAM HOUSTON TX, HQDA ARMY STAFF WASHINGTON DC, HQDA CSA WASHINGTON DC, HQDA EXEC OFFICE WASHINGTON DC, HQDA IMCOM OPS DIV WASHINGTON DC, HQDA SEC ARMY WASHINGTON DC, HQDA SECRETARIAT WASHINGTON DC, HQDA SURG GEN WASHINGTON DC, MEDCOM HQ EOC FT SAM HOUSTON TX, NETCOM G3 CURRENT OPS FT HUACHUCA AZ, NGB WASHINGTON DC, SMDC ARSTRAT CG ARLINGTON VA, SMDC ARSTRAT G3 ARLINGTON VA, SUPERINTENDENT USMA WEST POINT NY, SURGEON GEN FALLS CHURCH VA, USAR AROC FT BRAGG NC, USAR CMD GRP FT BRAGG NC, USAR DCS G33 OPERATIONS FT BRAGG NC, USARCENT G3 FWD, USARPAC COMMAND CENTER FT SHAFTER HI

CC: HQDA AOC DAMO ODO OPS AND CONT PLANS WASHINGTON DC, HQDA AOC G3 DAMO CAT OPSWATCH WASHINGTON DC, HQDA AOC G3 DAMO OD DIR OPS READ AND MOB WASHINGTON DC

CUI//
CONTROLLED BY: HQDA DCS, G-3/5/7
CONTROLLED BY: DAMO-OD
CUI CATEGORY: OPSEC
LIMITED DISSEMINATION CONTROL: FEDCON
POC: LTC NYKEBA L. ANTHONY 703-614-4281

SUBJECT: (U) FRAGO 4 TO HQDA EXORD 225-21 COVID-19 STEADY STATE OPERATIONS//

(U) REFERENCES.

REF//A/ THROUGH REF/FF/ NO CHANGE.
REF//GG/ [ADD] FRAGO 4 TO HQDA EXORD 225-21 COVID-19 STEADY STATE
OPERATIONS, DTG 251500Z AUGZ 21 //


1. (U) SITUATION.

1.A. THROUGH 1.F. NO CHANGE.

1.G. (U) THIS ORDER ADDRESSES DEPARTMENT OF THE ARMY IMPLEMENTATION OF
ANNEX FF, MANDATORY CORONAVIRUS DISEASE 2019 VACCINATION OF DEPARTMENT
OF DEFENSE SERVICE MEMBERS, 24 AUGUST 2021. IT DOES NOT ADDRESS
FEDERAL CIVILIANS OR CONTRACTOR EMPLOYEES.

2. (U) MISSION. NO CHANGE.

3. (U) EXECUTION.

3.A. (U) NO CHANGE.

3.B. (U) CONCEPT OF THE OPERATION.

3.B.1 (U) NO CHANGE.

3.B.2. (U) NO CHANGE.

3.B.3. (U) [CHANGE TO READ] THE SECRETARY OF DEFENSE DIRECTED ALL
MEMBERS OF THE ARMED FORCES UNDER THE DEPARTMENT OF DEFENSE BE FULLY
VACCINATED AGAINST COVID-19 WITH THE FDA APPROVED VACCINE, IAW ANNEX
FF. THE ARMY WILL ACHIEVE A MINIMUM OF 90% OF ACTIVE DUTY SOLDIERS
VACCINATED NLT 01 DECEMBER 2021. ARMY NATIONAL GUARD AND ARMY RESERVE
FORMATIONS WILL REACH A MINIMUM OF 90% VACCINATED NLT 1 APRIL 2022.
SEE PARAGRAPH 3.D.8. FOR COORDINATING INSTRUCTIONS.

3.B.3.A. (U) [ADD] HQDA HAS FACILITATED DISTRIBUTION OF DOSES TO MEET
75% OR MORE OF THE COMMAND REPORTED SERVICE MEMBER VACCINE DEMAND WITH
AN ARRIVAL DATE O/A 01 SEPTEMBER 2021. INSTALLATION MTFS WILL THEN
CONTINUE TO PLACE ORDERS, WITHIN A CONTROLLED SUPPLY RATE, FOR COVID-
19 VACCINE THROUGH UNITED STATES ARMY MEDICAL MATERIEL AGENCY-
DISTRIBUTION OPERATIONS CENTER (USAMMA-DOC) TO SATISFY REMAINING
INSTALLATION DEMAND.

3.C. (U) TASKS TO ARMY STAFF AND SUBORDINATE COMMANDS.

3.C.1. NO CHANGE.

3.C.2. (U) THE DIRECTOR OF THE ARMY NATIONAL GUARD (USARNG).

3.C.2.A. THROUGH 3.C.2.D. NO CHANGE.

3.C.2.E.  (U) [ADD] CONDUCT COVID-19 VACCINATION OPERATIONS OF ALL ARNG SERVICE MEMBERS. ESTABLISH A TIMELINE TO REACH 90% VACCINATED NLT 1 JUNE 2022.

3.C.3.  (U) THE CHIEF OF ARMY RESERVE (OCAR)/COMMANDING GENERAL UNITED STATES ARMY RESERVE COMMAND (USARC).

3.C.3.A. THROUGH 3.C.3.D. NO CHANGE.

3.C.3.E.  (U) [ADD] CONDUCT COVID-19 VACCINATION OPERATIONS OF ALL USAR SERVICE MEMBERS. ESTBLISH A TIMELINE TO REACH A MINIMUM OF 90% VACCINATED NLT 1 MARCH 2022.

3.C.3.F (U) [ADD] AUTHORIZED TO COORDINATE WITH LOCAL INSTALLATION MTFS OR OTHER DOD FACILITIES TO EXPEDITE MANDATORY VACCINATION OPERATIONS.

3.C.4. THROUGH 3.C.15. NO CHANGE.

3.C.16. (U) COMMANDER, U.S. ARMY MEDICAL COMMAND (USAMEDCOM).

3.C.16.A.  (U) [RESTATED] (U) MANAGE THE COLD CHAIN DISTRIBUTION AND STORAGE OF VACCINES AND REDISTRIBUTE VACCINATION WITHIN REGIONAL HEALTH COMMANDS AND THEIR ALIGNED INSTALLATIONS. ENSURE THE GAINING MTF IS READY TO RECEIVE, STORE, AND ADMINISTER THE DESIGNATED COVID-19 VACCINE.

3.C.16.A.1. NO CHANGE

3.C.16.A.2. [ADD] AUTHORIZED TO SUPPORT VACCINATION EFFORTS OF USAR SERVICE MEMBERS THROUGH INSTALLATION MTFS, TO INCLUDE OPERATIONS AFTER NORMAL BUSINESS DAY HOURS AND ON WEEKENDS.  DIRLAUTH WITH USAR UNITS IS AUTHORIZED.

3.C.16.A.3. [ADD] BPT SUPPORT THE CO-ADMINISTRATION OF THE COVID-19 VACCINES WITH INFLUENZA VACCINE.

3.C.17. THROUGH 3.C.30. NO CHANGE.

3.D.  (U) COORDINATING INSTRUCTIONS.

3.D.1. THROUGH 3.D.7. NO CHANGE.

3.D.8. (U) [CHANGE TO READ] IAW ANNEX FF, CONDUCT MANDATORY COVID-19 VACCINATION OPERATIONS OF UNVACCINATED SERVICE MEMBERS WITH THE FDA-APPROVED PFIZER / COMIRNATY COVID-19 VACCINE, OR CONTINUE VOLUNTARY VACCINATION WITH MODERNA OR J&J'S JANSSEN VACCINE.  SERVICE MEMBERS ARE CONSIDERED FULLY VACCINATED TWO WEEKS POST COMPLETION OF A TWO-DOSE SERIES VACCINE OR TWO WEEKS POST COMPLETION OF A SINGLE DOSE VACCINE.

3.D.8.A. (U) [CHANGE TO READ] WHILE THE ONLY MANDATORY COVID-19 VACCINE IS THE FDA-APPROVED PFIZER / COMIRNATY COVID-19 VACCINE, SERVICE MEMBERS MAY CHOOSE TO RECEIVE ANY EUA AUTHORIZED VACCINE TO SATISFY THE SECRETARY OF DEFENSE COVID-19 VACCINATION REQUIREMENT. SERVICE MEMBERS WHO HAVE COMPLETED AN EUA AUTHORIZED SERIES ARE NOT REQUIRED TO START THE SERIES AGAIN WITH THE FDA APPROVED VACCINE.

3.D.8.A.1 (U) [ADD]  SERVICE MEMBERS WHO HAVE STARTED BUT HAVE NOT COMPLETED THE MODERNA SERIES, MAY CHOOSE TO COMPLETE THE SERIES WITH THE SAME VACCINE PRODUCT, OR WILL COMPLETE THE SERIES WITH THE FDA APPROVED PFIZER / COMIRNATY COVID-19 VACCINE, AS THIS IS NOT IN VIOLATION OF SAFETY OR EFFECTIVNESS OF THE VACCINE.

3.D.8.A.2. (U) [ADD] SERVICE MEMBERS WHO ARE ACTIVELY PARTICIPATING IN COVID-19 CLININCAL TRIALS ARE EXEMPTED FROM MANDATORY VACCINATION AGAINST COVID-19 UNTIL THE TRIAL IS COMPLETE.

3.D.8.B.  (U) [CHANGE TO READ] COMMANDERS WILL READ AND COMPLY WITH AR 600-20 (ARMY COMMAND POLICY), PARAGRAPH 5-4G, FOR COMMAND AUTHORITY FOR IMMUNIZATIONS.

3.D.8.B.1.  (U) [ADD] IF A SOLDIER DECLINES TO BE IMMUNIZED, THE COMMANDER WILL ENSURE THE SOLDIER UNDERSTANDS THE PURPOSE OF THE VACCINE; ENSURE THAT THE SOLDIER HAS BEEN ADVISED OF THE POSSIBILITY THAT THE DISEASE MAY BE PRESENT IN A POSSIBLE AREA OF OPERATION; AND ENSURE THAT THE SOLDIER IS EDUCATED ABOUT THE VACCINE AND HAS BEEN ABLE TO DISCUSS ANY CONCERNS ABOUT RECEIVING THE VACCINE WITH MEDICAL AUTHORITIES.

3.D.8.B.2.  (U) [ADD] IF THE SOLDIER CONTINUES TO REFUSE TO BE IMMUNIZED, COUNSEL THE SOLDIER IN WRITING THAT HE OR SHE IS LEGALLY REQUIRED TO BE IMMUNIZED, THAT IF THE SOLDIER CONTINUES TO REFUSE TO BE IMMUNIZED THAT HE OR SHE WILL BE LEGALLY ORDERED TO DO SO AND THAT FAILURE TO OBEY THE ORDER MAY RESULT IN ADVERSE ADMINISTRATIVE OR PUNITIVE ACTION AS DEEMED APPROPRIATE BY THE COMMANDER. ORDER THE SOLDIER TO RECEIVE THE IMMUNIZATION. REFERENCE ANNEX NN AND ANNEX OO FOR TEMPLATE COUNSELING STATEMENTS.

3.D.8.B.4. (U) [ADD] THERE WILL BE NO INVOLUNTARY (FORCIBLE) IMMUNIZATIONS.

3.D.8.B.5 (U) [ADD] THE TWO TYPES OF EXEMPTIONS FROM IMMUNIZATION ARE MEDICAL AND ADMINISTRATIVE. ADMINISTRATIVE EXEMPTIONS INCLUDE RELIGIOUS ACCOMMODATIONS, AS WELL AS OTHERS ENUMERATED IN AR 40-562 (IMMUNIZATIONS AND CHEMOPROPHYLAXIS FOR THE PREVENTION OF INFECTIOUS DISEASES). COMMANDERS WILL REFER TO AR 40-562, PARAGRAPH 2-6, AND AR 600-20, APPENDIX P-2, FOR GUIDANCE ON PROCESSING IMMUNIZATION EXEMPTION REQUESTS.

3.D.8.B.5.A.  (U) [ADD] HEALTH CARE PROVIDERS WILL DETERMINE A MEDICAL EXEMPTION BASED ON THE HEALTH OF THE VACCINE CANDIDATE AND THE NATURE OF THE IMMUNIZATION UNDER CONSIDERATION. MEDICAL EXEMPTIONS MAY BE

TEMPORARY (UP TO 365 DAYS) OR PERMANENT. APPROVAL AUTHORITY FOR PERMANENT MEDICAL EXEMPTIONS IS TSG. SOLDIERS WHO BELIEVE THEY REQUIRE A MEDICAL EXEMPTION SHOULD CONSULT WITH A HEALTH CARE PROVIDER.

3.D.8.B.5.A.1. (U) [ADD] ALL REQUESTS FOR PERMANENT MEDICAL EXEMPTIONS MUST BE STAFFED TO THE OFFICE OF THE SURGEON GENERAL. THE SURGEON GENERAL (TSG) MAY DELEGATE APPROVAL AUTHORITY FOR PERMANENT MEDICAL EXEMPTIONS. NO FURTHER DELEGATIONS BELOW TSG'S DESIGNEE ARE PERMITTED.

3.D.8.B.5.B. (U) [ADD] PURSUANT TO AR 600-20, APPENDIX P-2B, SOLDIERS WITH RELIGIOUS PRACTICES IN CONFLICT WITH IMMUNIZATION REQUIREMENTS MAY REQUEST AN EXEMPTION THROUGH COMMAND CHANNELS. TSG IS THE ONLY APPROVAL OR DISAPPROVAL AUTHORITY FOR IMMUNIZATION ACCOMMODATION REQUESTS. THE ASA (M&RA) IS THE APPELLATE AUTHORITY. ANY RELIGIOUS ACCOMMODATION REQUEST FOR AN IMMUNIZATION EXEMPTION MUST COMPLY WITH THE REQUIREMENTS DESCRIBED IN AR 600-20, APPENDIX P-2B, AND DODI 1300.17, "RELIGIOUS LIBERTY IN THE MILITARY SERVICES," SEPTEMBER 1, 2020.

3.D.8.B.5.B.1 (U) [ADD] IAW AR 600-20, APPENDIX P-2B, COMMANDERS WILL ARRANGE FOR AN IN-PERSON OR TELEPHONIC INTERVIEW BETWEEN A SOLDIER REQUESTING A RELIGIOUS ACCOMMODATION AND THE UNIT OR OTHER ASSIGNED CHAPLAIN. THE COMMANDER MUST COUNSEL THE SOLDIER THAT NONCOMPLIANCE WITH IMMUNIZATION REQUIREMENTS MAY ADVERSELY IMPACT DEPLOYABILITY, ASSIGNMENT, OR INTERNATIONAL TRAVEL, AND THAT THE EXEMPTION MAY BE REVOKED UNDER IMMINENT RISK CONDITIONS. A LICENSED HEALTH CARE PROVIDER WILL COUNSEL THE APPLICANT TO ENSURE THE APPLICANT IS MAKING AN INFORMED DECISION IAW AR 600-20, APPENDIX P-2B(3).

3.D.8.B.5.B.2. (U) [ADD] THE IMMEDIATE COMMANDER THROUGH THE GCMCA MUST REVIEW THE REQUEST AND RECOMMEND APPROVAL OR DENIAL TO TSG. CHAIN-OF-COMMAND RECOMMENDATIONS WILL ADDRESS THE FACTORS OF MILITARY NECESSITY DESCRIBED IN AR 600-20, PARAGRAPH 5-6A. A LEGAL REVIEW MUST BE CONDUCTED AT THE GCMCA LEVEL PRIOR TO FORWARDING THE REQUEST. UPON COMPLETION, THE GCMCA WILL UPLOAD THE REQUEST INTO TMT FOR STAFFING TO TSG.

3.D.8.B.5.B.3. (U) [ADD] SOLDIERS WITH PENDING ACTIVE REQUESTS FOR AN IMMUNIZATION EXEMPTION SUBMITTED IAW AR 40-562 ARE TEMPORARILY DEFERRED FROM IMMUNIZATION, PENDING THE OUTCOME OF THEIR REQUEST OR ANY APPEAL OF A DENIED REQUEST.

3.D.8.B.5.C. (U) [ADD] COMMANDERS WILL NOT TAKE ADVERSE ADMINISTRATIVE ACTION, JUDICIAL OR NON-JUDICIAL PUNISHMENT BASED SOLELY ON A SOLDIER'S REFUSAL TO RECEIVE THE VACCINE UNTIL FURTHER NOTICE. COMMANDERS AND LEADERS WILL CONTINUE TO TREAT ALL SOLDIERS WITH DIGNITY AND RESPECT.

3.D.8.B.5.C.1. (U) [ADD] COMMANDERS WITH SOLDIERS WHO HAVE SUBMITTED AND ARE PENDING A DECISION ON A MEDICAL OR ADMINISTRATIVE EXEMPTION, OR WHO HAVE SOLDIERS WHO HAVE DECLINED THE VACCINE AFTER RECEIVING THE REQUIRED COUNSELING AND ANY FOLLOW-ON DIRECT ORDER, WILL ENSURE SUCH

SOLDIERS COMPLY WITH EXISTING DOD AND ARMY GUIDANCE FOR FORCE HEALTH PROTECTION MEASURES APPLICABLE TO UNVACCINATED PERSONNEL.

3.D.8.B.6.  (U) [ADD] THE ARMY NATIONAL GUARD/ARMY NATIONAL GUARD OF THE UNITED STATES AND THE U.S. ARMY RESERVE WILL APPLY AR 600-20, AR 40-562 AND THIS ORDER WHEN PROCESSING IMMUNIZATION EXEMPTION REQUESTS. FOR RELIGIOUS ACCOMMODATION REQUESTS FOR IMMUNIZATION EXEMPTIONS, NATIONAL GUARD PACKETS MUST INCLUDE THE SOLDIER'S REQUEST, CHAIN-OF-COMMAND RECOMMENDATIONS ON THE REQUEST, AN INTERVIEW FROM THE STATE'S CHAPLAIN, AND LEGAL REVIEW AT THE DIVISION OR STATE LEVEL. PRIOR TO FORWARDING, A LEGAL REVIEW FROM THE STATE'S STAFF JUDGE ADVOCATE IS REQUIRED.

3.D.8.B.7.  (U) [ADD] COMMANDERS WILL CONSULT WITH THEIR SERVICING JUDGE ADVOCATE/LEGAL ADVISOR AND APPROPRIATE MEDICAL PROFESSIONALS WHEN IMPLEMENTING THIS ORDER.

3.D.8.C. NO CHANGE.

3.D.8.D.  (U) [CHANGE TO READ] INSTALLATION MTFS, IN COORDINATION WITH THEIR INSTALLATION COMMANDS, WILL PLACE COVID-19 VACCINE ORDERS THROUGH USAMMA-DOC TO SATISFY LOCAL DEMAND IAW ESTABLISHED CONTROL SUPPLY RATES BELOW.  SEE ANNEX HH, MMQC-21-1425, FOR FURTHER DETAILS ON THE ORDERING PROCESS.

3.D.8.D.1 (U) [ADD] MEDCOM HAS DELEGATED AUTHORITY TO APPROVE ORDERS ABOVE THE CONTROLLED SUPPLY RATE FOR COVID-19 VACCINE. HQDA G-3/5/7 WILL ADJUDICATE ANY MEDCOM RECCOMMENDED DISAPPROVALS.

3.D.8.D.2 (U) [ADD] MTFS AUTHORIZED TO STORE AND ADMINISTER PFIZER MAY ORDER UP TO 3,510 DOSES OR THREE TRAYS PER WEEK.

3.D.8.D.3 (U) [ADD] MTFS AUTHORIZED TO STORE AND ADMINISTER MODERNA MAY ORDER UP TO 2,000 DOSES.

3.D.8.D.4 (U) [ADD] MTFS AUTHORIZED TO STORE AND ADMINISTER J&J MAY ORDER UP TO 1,000 DOSES.

3.D.8.E. THROUGH 3.D.8.J. NO CHANGE.

3.D.8.K. (U) [ADD] (U) IAW ANNEX II, CDC RECOMMENDS INDIVIDUALS, AT LEAST 12 YEARS OLD, WITH MODERATELY TO SEVERELY COMPROMISED IMMUNE SYSTEMS RECEIVE A THIRD DOSE OF MRNA COVID-19 VACCINE AT LEAST 28 DAYS FOLLOWING THE INITIAL TWO DOSES.

3.D.8.L. (U) [ADD] (U) IAW ANNEX GG, PFIZER COVID-19 VACCINE RECEIVED A 90 DAY SHELF LIFE EXTENSION FOR DOSES MAINTAINED AT ULTRA COLD STORAGE (-90C TO —60C) WITH EXPIRATION DATES IN AUGUST 2021 THROUGH FEBRUARY 2022.

3.D.8.M.   (U)  [ADD] THE UPDATED PFIZER COVID-19 VACCINE FACT SHEETS FOR HEALTHCARE PROVIDERS, AND RECIPIENTS AND CAREGIVERS ARE AT ANNEX JJ AND ANNEX KK.

3.D.M.1. (U) [ADD] MANUFACTURE COLD CHAIN MANAGEMENT FOR PFIZER VACCINE CAN BE FOUND IN ANNEX JJ. IAW THE MANUFACTURE GUIDLINES, PFIZER CAN BE STORED AT REFRIGERATED TEMPERTURES FOR UP TO 30 DAYS. THIS SUPPORTS DISTRIBIUTION TO SITES THAT DO NOT HAVE COLD AND ULTRA-COLD STORAGE CAPABILITY.

3.D.9. (U)  [CHANGE TO READ]  OFFICE OF PUBLIC AFFAIRS GUIDANCE IS PUBLISHED IN ANNEX J.

3.D.10. THROUGH 3.D.13. NO CHANGE.

4.  (U) SUSTAINMENT.  NOT USED.

5.  (U) COMMAND AND SIGNAL.

5.A.  (U) COMMAND.  NOT USED.

5.B.  (U) SIGNAL.

5.B.1.  (U) HEADQUARTERS DEPARTMENT OF THE ARMY COVID-19 POINTS OF CONTACT (POC). HQDA COVID-19 OPT AT USARMY.PENTAGON.HQDA-DCS-G-3-5-7.MBX.COVID-OPT@MAIL.MIL;

5.B.1.A.  (U) G-1 POC IS COL MICHAEL A. ZWEIFEL, MICHAEL.A.ZWEIFEL.MIL@MAIL.MIL, (703) 697-8469.

5.B.1.B.  (U) G-2 POC IS COL MANUEL F. RAMIREZ, MANUEL.F.RAMIREZ.MIL@MAIL.MIL, (703)697-5484.

5.B.1.C.  (U) G-4 POC IS G4 ALOC USARMY.PENTAGON.HQDA.MBX.AALOCATC@MAIL.MIL, (703) 614-2149.

5.B.1.D.  (U) LABORATORY RESPONSE NETWORK POC IS DR. WILLIAM NAUSCHUETZ, LABORATORY BIOPREPAREDNESS COORDINATOR USAMEDCOM, WILLIAM.F.NAUSCHUETZ.CIV@MAIL.MIL, (210) 295-7269 OR (210) 386-1480.

5.B.1.E.  (U) USAMEDCOM PUBLIC HEALTH POC IS COL RICK CHAVEZ, RODRIGO.CHAVEZ5.MIL@MAIL.MIL, (703) 681-9510 OR COL MICHELE A. SOLTIS, MICHELE.A.SOLTIS.MIL@MAIL.MIL, (703) 681- 6043.

5.B.1.F.  (U) ARMY PUBLIC HEALTH CENTER POC IS DR. STEVEN CERSOVSKY, STEVEN.B.CERSOVSKY.CIV@MAIL.MIL, (410) 436-4311.

5.B.1.G.  (U) ARMY PUBLIC AFFAIRS POC IS LTC MARY RICKS, MARY.A.RICKS.MIL@MAIL.MIL, (703) 695-0378; OR MR. TERRANCE MANN, TERRANCE.F.MANN.CIV@MAIL.MIL, (202) 802-3484.

5.B.1.H.   (U) OFFICE OF THE JUDGE ADVOCATE GENERAL POC LTC JAMES MCINERNEY, JAMES.A.MCINERNEY.MIL@MAIL.MIL, (703) 614-4630,

5.B.1.I.   (U) ARMY NATIONAL GUARD POC IS MAJ TIMOTHY MCCORMIC, TIMOTHY.A.MCCORMIC.MIL@MAIL.MIL, (703) 601-7620.

5.B.1.J.   (U) UNITED STATES ARMY RESERVES POC IS LTC RAYMOND D. HARPER, RAYMOND.D.HARPER4.MIL@MAIL.MIL, 703.614-5271.

5.B.1.K.   (U) OFFICE OF THE SURGEON GENERAL POC IS LTC KENNETH LUTZ, KENNETH.C.LUTZ.MIL@MAIL.MIL, (703) 681-8197.

5.B.1.L.   (U) ASSISTANT SECRETARY OF THE ARMY (FINANCIAL MANAGEMENT AND COMPTROLLER) POC IS COL PERNELL A. ROBINSON, PERNELL.A.ROBINSON.MIL@MAIL.MIL, (703) 614-1618.

5.B.1.M.   (U) HEADQUARTERS DEPARTMENT OF THE ARMY WATCH: NIPR EMAIL USARMY.PENTAGON.HQDA.MBX.ARMYWATCH@MAIL.MIL, SIPR EMAIL USARMY.PENTAGON.HQDA.MBX.ARMYWATCH@MAIL.SMIL.MIL.

5.B.1.N.   (U) HEADQUARTERS DEPARTMENT OF THE ARMY COVID-19 CRISIS ACTION TEAM INFO:

NIPR PORTAL:
HTTPS://G357.ARMY.PENTAGON.MIL/OD/ODO/ARMYOPCENTER/CAWG/CAT/SITEPAGESC
ORONAVIRUS%20(COVID-19).ASPX

SIPR PORTAL:
HTTPS://G357.ARMY.PENTAGON.SMIL.MIL/OD/ODO/ARMYOPCENTER/CRISISACTIONPA
GE/SITEPAGES/HOME.ASPX

DOMS NIPR OMB:
USARMY.PENTAGON.HQDA-DCS-G-3-5-7.MBX.DOMS-OPERATIONS@MAIL.MIL

DOMS SIPR OMB:
USARMY.PENTAGON.HQDA-DCS-G-3-5-7.MBX.AOC-DOMS-TEAM@MAIL.SMIL.MIL

6.   (U) THE EXPIRATION DATE OF THIS MESSAGE IS 31 DECEMBER 2026, UNLESS FORMALLY RESCINDED OR SUPERSEDED.


ATTACHMENT:
ANNEX A – ARMY INSTALLATION GATING CRITERIA REPORT.
ANNEX B – SECRETARY OF DEFENSE MEMORANDUM, "UPDATE TO CONDITIONS-BASED APPROACH TO CORONAVIRUS DISEASE 2019 PERSONNEL MOVEMENT AND TRAVEL RESTRICTIONS," 15 MARCH 2021.
ANNEX C - COVID-19 PERSONAL PROTECTIVE EQUIPMENT, LOGSTAT REPORT.
ANNEX D - HQDA COVID-19 POSITIVE CASE AND ROM TRACKER.
ANNEX E – SECRETARY OF THE ARMY MEMORANDUM, "DELEGATION OF AUTHORITY TO APPROVE TRAVEL OF ARMY PERSONNEL-TRANSITION FRAMEWORK," 20 APRIL 2021.

ANNEX F – SECRETARY OF DEFENSE MEMORANDUM, "GUIDANCE FOR COMMANDERS' RISK-BASED RESPONSES AND IMPLEMENTATION OF THE HEALTH PROTECTION CONDITION (HPCON) FRAMEWORK DURING THE CORONAVIRUS DISEASE 2019 PANDEMIC," 29 APRIL 2021.
ANNEX G - FORCE HEALTH PROTECTION SUPPLEMENT 20, DEPARTMENT OF DEFENSE GUIDANCE FOR PERSONNEL TRAVELING DURING THE CORONAVIRUS DISEASE 2019 PANDEMIC, 12 APRIL 2021.
ANNEX H – FORCE HEALTH PROTECTION SUPPLEMENT 16.1, DEPARTMENT OF DEFENSE GUIDANCE DEPLOYMENT AND REDEPLOYMENT OF INDIVIDUALS AND UNITS, 04 MAY 2021.
ANNEX I - FORCE HEALTH PROTECTION SUPPLEMENT 15.2, DEPARTMENT OF DEFENSE GUIDANCE FOR CORONAVIRUS DISEASE 2019 LABORATORY TESTING SERVICES, 02 JULY 2021.
[ADD] ANNEX J - PUBLIC AFFAIRS GUIDANCE. (TBD)
ANNEX K – TIER 4 TESTING CONCEPT AND APPROVAL AUTHORITY.
ANNEX L - DOD COVID TASK FORCE, COVID-19 TESTING PROTOCOLS, 08 MARCH 2021.
ANNEX M - CLMS FORM 1D, CLINICAL LABORATORY IMPROVEMENT PROGRAM WAIVED COMPLEXITY REGISTRATION/RENEWAL FORM.
ANNEX N - DEPUTY SECRETARY OF DEFENSE MEMORANDUM, "METHODS TO ENABLE AND ENCOURAGE VACCINATION AGAINST CORONAVIRUS DISEASE 2019," 20 MAY 2021.
ANNEX O – SECRETARY OF DEFENSE MEMORANDUM, "CO-ADMINISTRATION OF CORONAVIRUS DISEASE 2019 VACCINES WITH OTHER VACCINES," 03 JUNE 2021.
ANNEX P – DEPUTY SECRETARY OF DEFENSE MEMORANDUM, "CORONAVIRUS DISEASE 19 VACCINE GUIDANCE," 07 DECEMBER 2020.
ANNEX Q - UNDER SECRETARY OF DEFENSE MEMORANDUM SUPPLEMENTAL GUIDANCE FOR PROVIDING DOD CORONAVIRUS DISEASE 2019 VACCINE TO DOD CONTRACTOR EMPLOYEES AND SELECT FOREIGN NATIONALS, 31 DECEMBER 2020.
ANNEX R - SECRETARY OF DEFENSE MEMORANDUM, SECRETARIAL DESIGNEE STATUS FOR SELECT DEPARTMENT OF DEFENSE CIVILIAN EMPLOYEE AND CONTRACTOR EMPLOYEE DEPENDENTS OUTSIDE THE UNITED STATES FOR THE LIMITED PURPOSE OF RECEIVING CORONAVIRUS DISEASE 2019 VACCINATIONS, 03 JUNE 2021.
ANNEX S - SECRETARY OF DEFENSE MEMORANDUM, USE OF MASKS AND OTHER PUBLIC HEALTH MEASURES, 04 FEBRUARY 2021.
ANNEX T - FORCE HEALTH PROTECTION SUPPLEMENT 17.1, DEPARTMENT OF DEFENSE GUIDANCE FOR THE USE OF MASKS, PPE, AND NPI, 22 JUNE 2021.
ANNEX U – SECRETARY OF ARMY MEMORANDUM, USE OF MASKS AND DELEGATION OF AUTHORITY TO GRANT EXCEPTIONS, 24 FEBRUARY 2021.
ANNEX V - [RESCINDED]
ANNEX W - POOLED TESTING GUIDANCE AND STRATEGY, 02 JUNE 2021.
ANNEX X - UNDER SECRETARY OF DEFENSE MEMORANDUM GUIDANCE FOR PARTICIPATION OF INTERNATIONAL MILITARY STUDENTS AND TRAINEES, 07 MAY 2021.
ANNEX Y - UNDER SECRETARY OF DEFENSE MEMORANDUM SUPPLEMENTAL GUIDANCE ON ETP PROCESS, 08 JUNE 2021.
ANNEX Z - SECRETARY OF THE ARMY MEMORANDUM, DELEGATION OF AUTHORITY FOR HEALTH PROTECTION CONDITION (HPCON) IMPLEMENTATION AND OCCUPANCY REQUIREMENTS, 09 JUNE 2021.
ANNEX AA - FORCE HEALTH PROTECTION SUPPLEMENT 22, DOD GUIDANCE FOR CORONAVIRUS DISEASE 2019 SURVEILLANCE AND SCREENING TESTING, 21 JULY 2021.

ANNEX BB - UPDATED MASK GUIDANCE FOR ALL DOD INSTALLATIONS AND OTHER FACILITIES, 28 JULY 2021.
ANNEX CC - CDC GUIDANCE FOR IMPLEMENTING COVID-19 PREVENTION STRATEGIES, 27 JULY 2021.
ANNEX DD - MEDICAL MATERIAL QUALITY CONTROL MESSAGE, MMQC-21-1419, (J&J) JANSSEN COVID-19 VACCINE SHELF-LIFE EXTENSION, 28 JULY 2021.
ANNEX EE - COVID-19 VACCINATION REQUIREMENT REPORT.
ANNEX FF - MANDATORY CORONAVIRUS DISEASE 2019 VACCINATION OF DEPARTMENT OF DEFENSE SERVICE MEMBERS, 24 AUGUST 2021.
[ADD] ANNEX GG - MEDICAL MATERIAL QUALITY CONTROL MESSAGE, MMQC-21-1463, PFIZER LICENSE AND SHELF LIFE EXTENSION, 24 AUGUST 2021.
[ADD] ANNEX HH - MEDICAL MATERIAL QUALITY CONTROL MESSAGE, MMQC-21-1425, UPDATED COVID-19 VACCINE ORDERING GUIDELINES, 09 AUGUST 2021.
[ADD] ANNEX II - MMQC 21 1454 ADDITIONAL DOSE OF COVID 19 VACCINE FOR IMMUNOCOMPROMISED PERSONS,13 AUGUST 2021.
[ADD] ANNEX JJ - UPDATED PFIZER FACT SHEET FOR HEALTHCARE PROVIDERS, 24 AUGUST 2021.
[ADD] ANNEX KK - UPDATED PFIZER FACT SHEETS FOR PATIENTS AND CAREGIVERS, 24 AUGUST 2021.
[ADD] ANNEX LL - TBD
[ADD] ANNEX MM - TBD
[ADD] ANNEX NN - SAMPLE DA FORM 4856 FOR ENLISTED VACCINE REFUSALS.
[ADD] ANNEX OO - SAMPLE DA FORM 4856 FOR OFFICER VACCINE REFUSALS.

# Exhibit C



**SECRETARY OF THE ARMY**
**WASHINGTON**

1 6 NOV 2021

MEMORANDUM FOR SEE DISTRIBUTION

SUBJECT: Flagging and Bars to Continued Service of Soldiers Who Refuse the COVID-19 Vaccination Order

1. Purpose. This memorandum provides policy and procedures for flagging Soldiers who refuse the COVID-19 vaccination order and are not pending an exemption request.

2. Background. On 14 September 2021, FRAGO 5 to HQDA EXORD 225-21 (COVID-19 Steady State Operations) was published. This order directed all Soldiers, not otherwise exempt, to become fully vaccinated against COVID-19. FRAGO 5 directs that, during Phase 1, Soldiers refusing the mandatory vaccination order will be flagged IAW Army Regulation (AR) 600-8-2 and Commanders will initiate a General Officer Memorandum of Reprimand, unless the Soldier has received, or is pending a final decision on, a medical or administrative exemption. Administrative exemptions include religious accommodations as well as others enumerated in AR 40-562.

3. Applicability. The provisions of this memorandum apply to the Regular Army, Army National Guard/Army National Guard of the United States, and U.S. Army Reserve.

4. Policy. I have determined all Solders who refuse the mandatory vaccination order, and who have not received, and are not pending final decision on, a medical or administrative exemption, will remain flagged under flag code "A." Soldiers who were previously flagged, and whose flags have since been removed, will be reflagged in accordance with this policy.

   a. The effective date of the flag will be the date the Soldier makes a final declination of immunization, following a meeting with a medical professional and second order to receive the vaccine from an immediate commander, as instructed in FRAGO 5 to HQDA EXORD 225-21, paragraph 3.D.8.B.5.A.

   b. The flag will remain in place beyond completion of any ensuing non-punitive memorandum of reprimand. The Soldier will remain flagged until they are fully vaccinated, receive an approved medical or administrative exemption, or are separated from the Army.

   c. Soldiers flagged under this policy are still eligible for Disability Evaluation System processing. Additional personnel actions, to include retirement, unqualified resignation, and separation upon expiration of term of service, will be processed in accordance with applicable policy and regulation.

SUBJECT: Flagging and Bars to Continued Service of Soldiers Who Refuse the COVID-19 Vaccination Order

d. Favorable personnel actions are suspended for flagged Soldiers in accordance with AR 600-8-2, paragraph 3-1, including, but not limited to, reenlistment, reassignment, promotion, appearance before a semi-centralized promotion board, issuance of awards and decorations, attendance at military or civilian schools, application for or use of tuition assistance, payment of enlistment bonus or selective reenlistment bonus, or assumption of command.

5. In conjunction with this policy, I authorize commanders to impose bars to continued service, under the provisions of AR 601-280, for all Soldiers who refuse the mandatory vaccination order without an approved exemption or a pending exemption request.

6. Proponent. The DCS, G-1 is the proponent for this policy guidance.

7. Duration. This memorandum is rescinded on publication of superseding guidance.

Christine E. Wormuth

Christine E. Wormuth

DISTRIBUTION:
Principal Officials of Headquarters, Department of the Army
Commander
    U.S. Army Forces Command
    U.S. Army Training and Doctrine Command
    U.S. Army Materiel Command
    U.S. Army Futures Command
    U.S. Army Pacific
    U.S. Army Europe
    U.S. Army Central
    U.S. Army North
    U.S. Army South
    U.S. Army Africa/Southern European Task Force
    U.S. Army Special Operations Command
    Military Surface Deployment and Distribution Command
    U.S. Army Space and Missile Defense Command/Army Strategic Command
    U.S. Army Cyber Command
    U.S. Army Medical Command
    U.S. Army Intelligence and Security Command
    U.S. Army Criminal Investigation Command
    U.S. Army Corps of Engineers

SUBJECT: Flagging and Bars to Continued Service of Soldiers Who Refuse the COVID-19 Vaccination Order

U.S. Army Military District of Washington
U.S. Army Test and Evaluation Command
U.S. Army Human Resources Command
Superintendent, U.S. Military Academy
Director, U.S. Army Acquisition Support Center
Superintendent, Arlington National Cemetery
Commandant, U.S. Army War College
Director, U.S. Army Civilian Human Resources Agency

CF:
Director of Business Transformation
Eighth U.S. Army

3

# Exhibit D



**SECRETARY OF THE ARMY**
**WASHINGTON**

3 1 JAN 2022

MEMORANDUM FOR SEE DISTRIBUTION

SUBJECT: Army Directive 2022-02 (Personnel Actions for Active Duty Soldiers Who Refuse the COVID-19 Vaccination Order and Accession Requirements for Unvaccinated Individuals)

1. References. See references enclosed.

2. Purpose. This directive establishes personnel policies and procedures for unvaccinated individuals seeking accession into the Army and Soldiers who refuse the novel Coronavirus 2019 (COVID-19) vaccination order.

3. Applicability. This Directive applies to all Soldiers of the Regular Army and Soldiers of the Army National Guard/Army National Guard of the United States and the U.S. Army Reserve when serving on active duty for more than 30 days, pursuant to Title 10, U.S. Code, and Cadets at the United States Military Academy (USMA) and Senior Reserve Officers' Training Corps (SROTC).

4. Policy. Individuals seeking accession into the Army and those Soldiers currently serving must be fully vaccinated against COVID-19.

    a. The following definitions apply for the purposes of this policy.

       (1) "fully vaccinated"—defined by the Department of Defense (DoD) in reference 1b

       (2) "Soldier refusing the vaccine order"—a Soldier in the Regular Army; Soldier in a Reserve component when serving on active duty for more than 30 days pursuant to Title 10, U.S. Code; a cadet at the United States Military Academy (USMA); a cadet candidate at the United States Military Academy Preparatory School (USMAPS); or a Senior Reserve Officers' Training Corps (SROTC) cadet who meets all of the following:

       (a) has received a lawful order to be fully vaccinated against COVID-19

       (b) has been provided a reasonable opportunity to receive the COVID-19 vaccination

       (c) has made a final declination of immunization as instructed in reference 1l

       (d) does not have a pending or approved medical or administrative exemption (to include religious accommodation)

SUBJECT: Army Directive 2022-02 (Personnel Actions for Active Duty Soldiers Who Refuse the COVID-19 Vaccination Order and Accession Requirements for Unvaccinated Individuals)

 b. COVID-19 Vaccine Exemptions. Soldiers may submit requests for medical or administrative exemption from mandatory immunization as enumerated in reference 1c. If a Soldier has a pending exemption request, and final action is taken to deny the exemption, to include any request for appeal, the Soldier will be ordered to receive the COVID-19 vaccination and counseled regarding this directive. If the Soldier refuses the COVID-19 vaccination order, the Soldier will be subject to action as listed in this directive.

 c. Involuntary Separation Policy.

 (1) Effective immediately, commanders will initiate involuntary administrative separation proceedings for Soldiers who have refused the lawful order to be vaccinated against COVID-19 and who do not have a pending or approved exemption request. Commands will process these separation actions, from initiation to a Soldier's potential discharge, as expeditiously as possible.

 (2) Exception. Soldiers who will final out-process for separation/retirement on or before 1 July 2022 or who will separate/retire after 1 July 2022, but will begin transition leave on or before 1 July 2022, will be permitted to execute their separation or retirement without the additional separation processing described elsewhere in this paragraph.

 d. Involuntary Separation Procedures. Consistent with reference 1a, all Soldiers, including those in an entry-level status, who are separated for refusing to become vaccinated will be issued either an Honorable or General (under honorable conditions) characterization of service unless additional misconduct warrants separation with an Other than Honorable characterization of service. Unless otherwise noted in this directive, these requests will be processed in accordance with current policy and regulations.

 (1) Enlisted Personnel.

 (a) Commanders will follow current policy for initiating administrative separation proceedings pursuant to reference 1k. The basis for separation will be for "Commission of a Serious Offense," under paragraph 14–12c of reference 1k. This applies to all enlisted Soldiers, regardless of whether the Soldier is in an entry-level status.

 (b) If an enlisted Soldier is subject to an administrative separation action on the basis of refusing the COVID-19 vaccination order, is recommended for retention by an administrative separation board or approved for retention by the separation authority, and remains unvaccinated, the separation authority will reinitiate an action for the exercise of Secretarial Plenary Authority under paragraph 15–2 of reference 1k.

SUBJECT: Army Directive 2022-02 (Personnel Actions for Active Duty Soldiers Who Refuse the COVID-19 Vaccination Order and Accession Requirements for Unvaccinated Individuals)

(c)   Qualitative Management Program (QMP). If a Regular Army enlisted Soldier is identified for potential denial of continued active duty service under the QMP based solely on adverse information from refusing the COVID-19 vaccination order, the Soldier will not be processed through the QMP. The Soldier's command will initiate involuntary separation for misconduct pursuant to this directive.

(d)   Expiration Term of Service (ETS). Commanders are not required to initiate involuntary administrative separation for enlisted personnel who have an ETS date on or before 1 July 2022 when the sole basis for involuntary separation is refusing the COVID-19 vaccination order. Soldiers with an ETS date on or before 1 July 2022 will be allowed to separate in accordance with chapter 4, reference 1k, unless separation on other grounds is warranted.

(2)   Commissioned and Warrant Officers.

(a)   Commanders will initiate an elimination action under reference 1g. The basis for separation will be for "Misconduct, Moral or Professional Dereliction," under paragraph 4–2b of reference 1g.

(b)   Probationary Officers. Involuntary separation for probationary officers will be processed under notification procedures, and the separation authority will be the Deputy Assistant Secretary of the Army (Review Boards) (DASA (RB)). Although the show cause authority (SCA) may provide recommendations on retention or separation, all actions will be processed to the DASA (RB) for final decision.

(c)   Non-Probationary Officers. The SCA will close the case, and no further separation-related action is required, if a non-probationary officer has been subject to an elimination action for refusing the COVID-19 vaccination order and a board of inquiry (BOI) determines that the officer should be retained on active duty. If the BOI determines that the officer should be separated, the SCA may provide recommendations on retention or separation, but the case will be processed to the DASA (RB) for final decision.

(d)   Unqualified Resignation (UQR). Officers refusing the COVID-19 vaccination order may submit a request for UQR. If submitted within 30 days of the date of this directive, and the request includes a final separation date on or before 1 July 2022, commanders will not initiate involuntary separation on the sole basis of refusing the COVID-19 vaccination order unless the UQR is denied. Qualifying UQRs submitted under this directive may be approved by the Commanding General, U.S. Army Human Resources Command, or other designee, despite the officer being flagged solely for refusing the COVID-19 vaccination order. If an officer has an exemption request that is

3

SUBJECT: Army Directive 2022-02 (Personnel Actions for Active Duty Soldiers Who Refuse the COVID-19 Vaccination Order and Accession Requirements for Unvaccinated Individuals)

subsequently denied, the officer will have the later of 14 days from final action or 30 days from the date of this directive to submit a UQR. If the UQR is not submitted within 14 days, involuntary separation will be initiated. Once a UQR is submitted, it may not be withdrawn absent a showing of good cause.

 e. Retirement.

  (1) All officer and enlisted personnel eligible to retire on or before 1 July 2022 will be permitted to retire as soon as practicable through expedited processes in lieu of involuntary separation. Requests for retirement must be submitted no later than 30 days from the date of this directive and include a final separation date no later than 1 July 2022.

  (2) Soldiers eligible to retire on or before 1 July 2022, who have a pending exemption request as of the date of this directive, and that exemption request is subsequently denied, will have the later of 14 days from final action or 30 days from the date of this directive to submit a request for retirement. The retirement request must include a final separation date that is on or before the later of either 1 July 2022 or 120 days from final action date on the exemption request.

 f. Disability Evaluation System (DES). Officers and enlisted personnel currently being processed through the Medical Evaluation Board/Physical Evaluation Board system pursuant to AR 635–40 will be processed in accordance with current policy and regulations.

 g. Compensation, Entitlements and Recoupment.

  (1) Soldiers separated will not be eligible for involuntary separation pay and may be subject to termination and recoupment of any unearned special or incentive pays. The effective date of the termination will be the date the commander initiates an involuntary administrative separation for any Soldier who has refused the COVID-19 vaccination order. The Soldier may be required to repay the unearned portion of the pay or benefit in accordance with current policy and regulations.

  (2) Unless otherwise prohibited by law or DoD policy, the Secretary of the Army may render a case-by-case determination that the Soldier's repayment of, or the Army's full payment of an unpaid portion of, a pay or benefit is appropriate.

  (3) Recoupment against Soldiers and cadets who are disenrolled or separated prior to the completion of their term of service will be processed in accordance with existing policy and regulations.

4

SUBJECT: Army Directive 2022-02 (Personnel Actions for Active Duty Soldiers Who Refuse the COVID-19 Vaccination Order and Accession Requirements for Unvaccinated Individuals)

h.  Evaluation Reports. When a Soldier refuses the order to be vaccinated against COVID-19 during a rating period, without a pending or approved medical or administrative exemption (to include religious accommodation), rating officials will document the refusal in the Soldier's evaluation report consistent with implementing instructions published by the Deputy Chief of Staff, G-1.

i.  Permanent Change of Station (PCS). Unvaccinated Soldiers who are pending a medical or administrative exemption (to include religious accommodation) will not PCS. Exceptions may only be approved by the Under Secretary of the Army. These requests will be submitted to the Under Secretary of the Army through the Vice Director of the Army Staff. Further, unvaccinated Soldiers who do not have a pending medical or administrative exemption (to include religious accommodation) remain flagged, and are therefore ineligible to PCS under current Army policies and in accordance with reference 1m.

j.  Accessions.

(1)  Enlistment into the Army. An enlisted applicant must have an approved pre-accession medical or administrative exemption (to include religious accommodation) or must agree to receive the COVID-19 vaccination on entrance to active duty or active duty for training.

(2)  Applicants for a Commissioning Program. Individuals seeking to enter into a cadet contract through the Reserve Officers' Training Corps (ROTC), gain admission as a cadet to USMA, or commission as an officer in the Army must be fully vaccinated against COVID-19 prior to entering into a cadet contract, signing the USMA Form 5–50, or being tendered an appointment as a commissioned officer unless they have an approved pre-accession medical or administrative exemption (to include religious accommodation).

(3)  Pre-Commissioning Cadets. Current cadets who refuse the COVID-19 vaccination order, and who do not have a pending or approved medical or administrative exemption (to include religious accommodation), will be processed for disenrollment and separation.

(a)  USMA Cadets/USMAPS Cadet Candidates. USMA will follow current policy for initiating administrative separation and disenrollment proceedings for cadets and cadet candidates pursuant to reference 1e, as appropriate. The basis for separation will be "Misconduct."

(b)  Army SROTC Cadets. The U.S. Army Cadet Command (USACC) will follow current policy for initiating disenrollment proceedings pursuant to reference 1d, as

SUBJECT: Army Directive 2022-02 (Personnel Actions for Active Duty Soldiers Who Refuse the COVID-19 Vaccination Order and Accession Requirements for Unvaccinated Individuals)

appropriate. The basis for disenrollment will be "Inaptitude for Military Service" under paragraph 3–43(a)(13) of reference 1d.

(4)  Direct appointment. Prior to accession, applicants must have an approved pre-accession medical or administrative exemption (to include religious accommodation) or must agree to receive the COVID-19 vaccination on entrance to active duty or active duty for training.

(5)  In-Service Officer Candidates. In-Service Candidates selected to attend the U.S. Army Officer Candidate School (OCS) must be fully vaccinated against COVID-19 prior to beginning OCS unless issued an approved medical or administrative exemption (to include religious accommodation). OCS candidates who refuse the COVID-19 vaccination order will be removed from OCS under the provisions of reference 1f.

k.  The Secretary of the Army continues to withhold the authority to impose non-judicial and judicial actions based solely on vaccine refusal.

5.  Proponent. The ASA (M&RA) has oversight of this policy and is authorized to grant exceptions to this directive and to amend the definitions contained in paragraph 4a of this directive. This authority may not be delegated. The Deputy Chief of Staff, G-1, in coordination with the ASA (M&RA), will publish implementing instructions as soon as possible.

6.  Duration. This directive is effective unless superseded or otherwise rescinded.

Encl                                    Christine E. Wormuth

DISTRIBUTION: (see next page)

6

SUBJECT: Army Directive 2022-02 (Personnel Actions for Active Duty Soldiers Who Refuse the COVID-19 Vaccination Order and Accession Requirements for Unvaccinated Individuals)


DISTRIBUTION:
Principal Officials of Headquarters, Department of the Army
Commander
    U.S. Army Forces Command
    U.S. Army Training and Doctrine Command
    U.S. Army Materiel Command
    U.S. Army Futures Command
    U.S. Army Pacific
    U.S. Army Europe and Africa
    U.S. Army Central
    U.S. Army North
    U.S. Army South
    U.S. Army Special Operations Command
    Military Surface Deployment and Distribution Command
    U.S. Army Space and Missile Defense Command/Army Strategic Command
    U.S. Army Cyber Command
    U.S. Army Medical Command
    U.S. Army Intelligence and Security Command
    U.S. Army Criminal Investigation Command
    U.S. Army Corps of Engineers
    U.S. Army Military District of Washington
    U.S. Army Test and Evaluation Command
    U.S. Army Human Resources Command
Superintendent, U.S. Military Academy
Director, U.S. Army Acquisition Support Center
Superintendent, Arlington National Cemetery
Commandant, U.S. Army War College
Director, U.S. Army Civilian Human Resources Agency


CF:
Director of Business Transformation
Commander, Eighth Army

**REFERENCES**

a.  National Defense Authorization Act for Fiscal Year 2022, 27 December 2022

b.  Secretary of Defense memorandum (Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members), 24 August 2021

c.  Army Directive 2021-33 (Approval and Appeal Authorities for Military Medical and Administrative Immunization Exemptions), 24 September 2021

d.  Army Regulation (AR) 145–1 (Senior Reserve Officers' Training Corps Program: Organization, Administration, and Training), 22 July 1996, with rapid action revision, 6 September 2011

e.  AR 150–1 (United States Military Academy Organization, Administration, and Operation), 12 January 2021

f.  AR 350–51 (United States Army Officer Candidate School), 11 June 2001

g.  AR 600–8–24 (Officer Transfers and Discharges), 8 February 2020

h.  AR 600–20 (Army Command Policy), 24 July 2020

i.  AR 623–3 (Evaluation Reporting System), 14 June 2019

j.  AR 635–40 (Disability Evaluation for Retention, Retirement, or Separation), 19 January 2017

k.  AR 635–200 (Active Duty Enlisted Administrative Separations), 28 June 2021

l.  Fragmentary Order 5 to Headquarters, Department of the Army Execution Order (EXORD) 225-21 (COVID-19 Steady State Operations), 14 September 2021, paragraph 3.D.8.B.5.A

m.  Secretary of the Army memorandum (Flagging and Bars to Continued Service of Soldiers Who Refuse the COVID-19 Vaccination Order), 16 November 2021

# Exhibit E





**DEPARTMENT OF THE ARMY**
**HEADQUARTERS, JOINT READINESS TRAINING CENTER AND FORT POLK**
**7260 ALABAMA AVENUE**
**FORT POLK, LOUISIANA 71459**

REPLY TO
ATTENTION OF

ATZL-JRB                                                    14 OCT 21

MEMORANDUM FOR: Commander, Operations Group

SUBJECT: Request for Religious Accommodation – 1SG Robert W. Galey Jr, 11Z, Task Force 1, Operations Group

1. References:

   a. Religious Freedom Restoration Act of 1993.

   b. Title 42, United States Code, section 2000bb-1-4 (Free Exercise of Religion Protected).

   c. AR 600-20, Army Command Policy, 24 July 2020.

   d. DoD Instruction 1300.17, Religious Liberty in the Military Services, 01 September 2020.

   e. AR 40-562, Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases, 07 October 2013.

2. I request a religious accommodation to immunizations and vaccines in accordance with standards provided in Army Regulation 600-20 Chapter 5-6 (Accommodating religious practices), Appendix P, Section P-2 (Processing requests related to medical care), 24 July 2020, and DoD Instruction 1300.17 Section 2.3 (Secretaries of the Military Departments) and Section 3.3 (Required Principles and Rules for Military Regulations and Policies), 01 September 2020.

3. I request a religious accommodation for a waiver of Army Regulation 40-562 Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases, regarding an exemption from all future immunizations.

ATZL-JRB
SUBJECT:  Request for Religious Accommodation – 1SG Robert Galey Jr., 1SG,
Task Force 1, Operations Group

4. This request is based on immunizations being in extreme violation of my
personal religious beliefs. The following describes how immunizations and/or
vaccines infringe on my religious practices: The Adenovirus, Polio,
DTAP/Polio/HiB Combo, Hepatitis A, Hepatitis A/Hepatitis B Combo, Rabies,
Varicella, Sh1ngias, MMR, MMRV Pro Quad, Influenza vaccines, and the current
COVID-19 mRNA vaccines and the Jansen vaccine use or contain cells, cellular
debris, protein, and/or DNA from willfully aborted human children. Receiving a
vaccine containing these materials, developed using these materials, or
researched using these materials requires complicit approval of violating the
commands found in Exodus 20:13 and Deuteronomy 5:17, "You shall not
murder".

   a.  The following ingredients were derived from dozens of unborn human
       souls who were sacrificed for social and/or personal reasons and then
       used in past and ongoing vaccine research and development: PER.C6,
       HEK-293, WI-38 (RA 27/3), WI-1, WI-2, WI-3, WI- 4, WI-5, WI-6, WI-7, VI-8,
       WI-9, WI-10, WI-11, WI-12, WI-13, WI-14, WI-15, WI-16, WI-17, WI-18,
       WI-19, WI-20, WI-21, WI-22, WI-23, WI-24, WI-25, WI-26, WI-27, WI-38,
       WI-44, MRC-5, Walvax-2, Johnson and Johnson vaccine stem cells from
       an aborted fetus in 1985, and the Pfizer and Moderna vaccines testing the
       mRNAs on fetal cell lines from an aborted fetus from 1973.

   b.  Receiving vaccinations and supporting vaccine research and development
       is an endorsement of the sacrificial murder of unborn children. Genesis 4:
       1, Jeremiah 1:5, and Psalm 139:13-16 demonstrate that the aborted
       unborn children used in the cell lines previously listed were recognized by
       the LORD God as human lives from the point of conception. Genesis 1:27-
       28, Genesis 4:1, Exodus 23:7, 2 Kings 17:17-18, Psalm 22:10, Psalm
       106:34-43, Psalm 113:9, Psalm 127:3-5, Psalm 139:13-16, Amos 1:13-15,
       Matthew 18:1-6, Matthew 19:13-15, and John 16:21 are just a few verses
       that show children, born and unborn, as blessings from the LORD God
       that are valued and loved by Him, their Creator. It is in His image these
       aborted children as well as all human beings were and are created, and
       their murder is abhorred and condemned by the LORD God, according to
       His Word, causing his anger to bum against their murderers as well as
       those complicit. Exodus 20:13, Leviticus 18:21, Leviticus 20:1-5,
       Deuteronomy 6:17, Deuteronomy 12:30-32, Deuteronomy 18:10, 2 Kings
       16:3, and Psalm 106:38 demonstrate that all child sacrifice is condemned
       by the LORD God with no exceptions allowing for medical advancement,
       social acceptance, or even the "greater good".

ATZL-JRB
SUBJECT: Request for Religious Accommodation – 1SG Robert Galey Jr., 1SG,
Task Force 1, Operations Group

c. 1 Corinthians 6:19-20 and 1 Corinthians 10:31 state, "That your body is a
temple of the Holy Spirit within you, you are not your own, for you were
bought with a price. So, glorify God in your body," and "So, whether you
eat or drink, or whatever you do, do all to the glory of God" (ESV). Aside
from the presence of aborted human fetal cells and debris in vaccinations,
the inclusion of neurotoxins, hazardous substances, attenuated viruses,
animal cells, foreign DNA or mRNA, carcinogens, and chemical wastes is
in violation of the command to treat my body as a temple for the Holy
Spirit of the LORD God. Genesis 9:4, Leviticus 17:10-11, Leviticus 17:14,
Deuteronomy 12:23, Acts 15:19-20, and Acts 15:28-29 demonstrate how
blood represents the life force of humans and that human blood is to be
kept pure under all circumstances and free from contaminants such as
foreign human and animal cells and debris.

5. I accepted Jesus Christ as my Lord and Savior when I was 12 years old. I
have attended church all of my life and joined St. Helen Baptist Church once I
was baptized. When my family moved, we moved our membership to Oakland
Woods Baptist Church where I remained a member until I joined the military in
2006 and was stationed at Ft. Benning, GA. There I transferred my membership
to Edgewood Baptist church. I am currently a member of First Baptist Church
DeRidder. When I joined the military I received all vaccinations that the army
required and have sense received all vaccinations required. I was completely
ignorant of the ingredients and how the vaccines were researched and tested.
While a member at Edgewood Baptist church I became more active in my
opposition to the great national sin of abortion. I volunteered my time to help the
church run Sound Choices conferences that my pastor led. The purpose of the
organization is to counsel women who are considering an abortion through crises
pregnancy centers around the country. I donated money to the same
organization. Over time I began to understand more and more how aborted
children were used in medical experiments and research and that there are huge
profits being made exploiting these murdered children. As my religious
convictions grew stronger on the matter, I felt compelled to find out more. This is
what caused me to begin in-depth research into the ingredients within vaccines,
how they are researched, and what trials and tests they are subjected to before
marketing. I did not assume a religious dilemma would present itself, but as I did
more research it became clear that I cannot practice my religion according to my
convictions while still receiving immunizations and vaccines researched,
produced, and containing the ingredients which I stated above for the reasons in
the Bible referenced above. For this reason, I am petitioning The Surgeon
General for a Religious Accommodation waiving AR 40-562, providing an
exemption to all vaccines and/or immunizations in accordance with AR 600-20,
chapter 5-6, and Appendix P, Section P-2, and DoD Instruction 1300.17 so that I
may continue my service in the Army while still adhering to my convictions for

3

ATZL-JRB
SUBJECT:  Request for Religious Accommodation – 1SG Robert Galey Jr., 1SG,
Task Force 1, Operations Group

practicing Christianity in accordance with the Holy Scriptures of the Bible, the
Word of the LORD God."

6.  I do not believe this request for religious accommodation is a hardship for the
Army, or for Operations Group.  I have contracted and recovered from Covid-19.
This was a documented case and can be seen in my medical record.  I have
natural immunity from surviving the disease. Additionally, wearing masks and the
practice of social distancing adds more protection.

7.  I understand that I must continue to comply with the medical standards if I am
notified my request is disapproved.  If my request is disapproved, I understand
that I may continue to serve without an accommodation or I may request
administrative separation.  I also understand that an approved commendation
continues throughout my Army Career, but may be suspended, modified, or
revoked by appropriate authorities when required by military necessity.

8.  Point of contact for this memorandum is 1SG Robert Galey at ███████████
and ███████████████████

Robert W. Galey Jr
1SG, 11Z
TM 1SG

4



**DEPARTMENT OF THE ARMY**
HEADQUARTERS, JOINT READINESS TRAINING CENTER AND FORT POLK
OPERATIONS GROUP, JOINT READINESS TRAINING CENTER
7260 ALABAMA AVENUE
FORT POLK, LOUISIANA  71459-5313

AFZL-JRI                                                        19 October 2021

MEMORANDUM FOR GCMCA for waiver request

SUBJECT:  Religious Accommodation Request Chaplain Interview – 1SG Galey, Robert

1.  On 19 October 2021 I conducted a telephonic interview with 1SG Robert Galey regarding his religious accommodation request for the COVID-19 immunization.

2.  1SG Galey identifies as a Southern Baptist, and holds to a conservative world view that is consistent with the tenets of the Southern Baptist faith tradition. He currently attends First Baptist Church in DeRidder on a weekly basis.

3.  1SG Galey believes the Bible to be the authorative word of God and views the command to not murder found in Exodus 20:13 and Deuteronomy 5:17 as being at the center of his desire for religious accommodation.  More specifically, he believes the current COVID-19 vaccines use or contain cells from "willfully aborted human children." To partake of this vaccine would be seen as "an endorsement of the sacrificial murder of unborn children" and an act that is "abhorred and condemned" by God.  He acknowledges that past vaccines he has received during his military service may fall into this category, but the pandemic and individual research, has helped him understand and come to terms with his positions. Should the accommodation not be approved, he will separate from the Army.

4.  I assess that 1SG Galey's religious beliefs are sincerely held and recommend that his request be submitted for further review.

5.  The POC for this memorandum is CH (CPT) Christopher Kitchens at ▮▮▮▮▮▮▮▮▮ or ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.

CHRISTOPHER S. KITCHENS
Chaplain (CPT), USA
JRTC Deputy Operations Group Chaplain



**DEPARTMENT OF THE ARMY**
HEADQUARTERS AND HEADQUARTERS COMPANY
JOINT READINESS TRAINING CENTER OPERATIONS GROUP
BUILDING 1633, SUITE 103, ALABAMA AVE.
FORT POLK, LOUISIANA 71459

ATZL-JRH                                                        21 October 2021

MEMORANDUM FOR RECORD

SUBJECT:  MSG Robert Galey Religious Accommodation Request Recommendation

1. The purpose of this memorandum is to voice my support for MSG Galey's Religious Accommodation Request submitted on 21 October 2021.

2. After reviewing MSG Galey's request, conducting an in-person interview with him and carefully considering Chaplain Kitchens' recommendation as the Operations Group Chaplain, I recommend approval of MSG Galey's request.

3. I would be remiss if I did not provide recommendations to risk-mitigation for MSG Galey. I believe that COVID mitigations that are currently in place are sufficient to prevent risk to mission or risk to force by approval of MSG Galey's request. I would stipulate however, that strict adherence to "social distancing" and PPE requirements will allow MSG Galey to continue to perform his duties in the United States Military without undue stress to his current or future units. This decision is based on the current guidance that "masking" and "social distancing" are enforced regardless of vaccination status. Should force protection guidance change in the future I recommend MSG Galey and his leadership to carefully construct an updated risk-mitigation plan at that point.

4. I have discussed the ramifications of denial of his request with MSG Galey to include his right to request separation under the provisions of AR 600-20, Chapter 5 and the referenced regulatory process outlined in AR 635-200. MSG Galey has acknowledged that he understands all facets of this discussion.

5. The POC for this memorandum is the undersigned and can be contacted at (███-
███ or ████████████████████

ROE.BENTON.FREDERI    Digitally signed by
CK.████████           ROE.BENTON.FREDERICK████████
                      Date: 2021.10.22 07:56:08 -05'00'

Benton F. Roe
CPT, IN
Commanding



**DEPARTMENT OF THE ARMY**
JOINT READINESS TRAINING CENTER OPERATIONS GROUP
7260 ALABAMA AVENUE
FORT POLK, LOUISIANA 71459-5304

ATZL-JR (ARIMS)                                        4 November 2021

MEMORANDUM FOR Commander, Joint Readiness Training Center and Fort Polk, 6661 Warrior Trail, Building 350, Fort Polk, LA 71459

SUBJECT:  Request for Religious Accommodation for Exemption from Immunizations – MSG Galey, Robert W. Jr., JRTC Operations Group, 11Z5O, DoDID 1245956289

1.  MSG Galey, Robert W. Jr., JRTC Operations Group, 11Z5O, DoDID 1245956289, requests a religious exemption for immunizations in accordance with the standards provided in Army Regulation (AR) 600-20, Appendix P-2.

2.  I recommend disapproval of this request for the following reasons:

    a.  I find that MSG Galey does not have a sincerely held religious belief, which is in opposition to receiving the vaccine.

    b.  I have full confidence in MSG Galey's request is motivated by misinformation and not based on beliefs.  He has received every vaccination that the Army has required up to this point, most of which were developed using the same process.

    c.  The health and welfare of all Soldiers to accomplish our mission is my responsibility. This request could put other Soldiers at risk and therefore I cannot support it.

    d.  I find that MSG Galey's exercise of his religious beliefs would not be burdened by him receiving the COVID-19 vaccine.

    e.  Given the circumstances of MSG Galey, I find that the COVID-19 vaccine is the least restrictive means of furthering the compelling government interest in Soldier and unit readiness.

    f.  This position differs from the position of the immediate commander.  My position is based on my responsibility IAW AR 600-20, the impacts on readiness that COVID has had on the Army.  Impacts that I saw as the commander of the Immediate Response Force last year and as a BCT CDR.  My experience in the Army and over the past 18 months of COVID tells me that masks are insufficient and vaccination is the best way to preserve the health and readiness of the force.

ATZL-JRO (ARIMS)
SUBJECT:  Request for Religious Accommodation for Exemption from Immunizations –
MSG Galey, Robert W. Jr., JRTC Operations Group, 11Z5O, DoDID 1245956289

3.  The point of contact for this memorandum is the undersigned at ████████ or
████████████████

ANDREW O. SASLAV
COL, IN
Commanding



**DEPARTMENT OF THE ARMY**
OFFICE OF THE SURGEON GENERAL
7700 ARLINGTON BOULEVARD
FALLS CHURCH, VA 22042-5140

DASG-ZA                                                                      1 4 MAR 2022

MEMORANDUM THRU Commanding General, Joint Readiness Training Center (JRTC) and Fort Polk, Fort Polk, LA 71459

FOR First Sergeant (1SG) Robert Galey, Jr., Headquarters and Headquarters Company (HHC), Task Force 1, JRTC Operations Group, Fort Polk, LA 71459

SUBJECT: Denial of Request for Religious Accommodation

1. I reviewed your religious accommodation request for an immunization exemption from the Army's COVID-19 vaccine mandate and other various vaccine requirements.

 a. Your request for exemption from the Army's COVID-19 vaccine mandate is denied.

 b. Your request for exemption from other vaccine requirements is overly broad as it relates to vaccines you have already received as well as possible future immunization requirements. If, in the future, your duties and circumstances change and you are required to receive any additional immunizations, you may submit a new religious accommodation request for adjudication at that time for those particular vaccines.

2. I considered your request, based on your Christian faith, and reviewed your specific case. This review included an examination of your chain of command recommendations, your unit chaplain finding of a sincere religious belief, and your current duties and role as an 11Z, Infantry Senior Sergeant. Additionally, I considered how your chain of command described your current responsibilities as an observer coach/trainer (OC/T), tasked with mentoring company commanders from rotational training units while they are training at JRTC. As such, you work in a squad-sized element and supervise eight subordinate OC/Ts and occasionally interact with foreign units that come to JRTC for training, and there is potential to travel OCONUS one to two times a year. Moreover, the JRTC mission relies on the operation group OC/Ts' ability to fulfill their training mission. Furthermore, your chain of command emphasized that JRTC is unlike many other installations in that international armed forces go there to train; thus, those training individuals have an increased risk of contracting COVID-19 based on exposure during international travel and may unwittingly bring the disease to the installation.

3. COVID-19 is a grave risk to the readiness of the force, and in your case, I find that vaccination is the least restrictive means to further the Department of the Army's compelling government interests, which includes protecting your health, the health of the force, and ensuring mission accomplishment.

DASG-ZA
SUBJECT: Denial of Request for Religious Accommodation

4. You may appeal this decision through your chain of command to the Assistant Secretary of the Army for Manpower & Reserve Affairs. If you choose to do so, you have seven calendar days from notification of my decision to submit any matters.

RAYMOND S. DINGLE
Lieutenant General, U.S. Army
The Surgeon General and
     Commanding General, USAMEDCOM

2



**DEPARTMENT OF THE ARMY**
HEADQUARTERS AND HEADQUARTERS COMPANY
TASK FORCE ONE, OPERATIONS GROUP
7205 ENTRANCE RD.
FORT POLK, LOUISIANA 71459-5314

ATZL-JRO-N                                              23 March 2022

MEMORANDUM THRU Commander Operations Group

FOR Assistant Secretary of the Army for Manpower & Reserve Affairs

SUBJECT:  Appeal of Religious Accommodation Decision by the Office of the Surgeon General – 1SG Galey, Robert W. Jr., Task Force One, Operations Group

1.  This memorandum is my appeal to the denial of my Religious Accommodation Request.  Below I have provided additional information that should provide a better perspective as to why my original request for religious accommodation was more than reasonable and how the denial of my request is inappropriate, very likely in violation of law (The Religious Freedom Restoration Act of 1993), and not in the best interest of the United States Army.

2.  The Surgeon General denied my request for religious accommodation despite the validation that my beliefs were sincere by Rev. Rittinger and my unit chaplain. The denial memorandum labeled my request "overly broad" because I have, in the past, received vaccinations which I currently want to be exempt from taking. The reason I am making this request presently, and have not done so before is easy to explain.  I was unaware that aborted fetal cells were used in the development and/or production of vaccines.  I was first made aware of the possible use of aborted fetal cells for the Covid-19 vaccine from a newsletter written by the Commander of Operations Group (COG), that was hung over the urinal in the Task Force One latrine in late August 2021.  Upon further research, I found that many vaccines use aborted fetal cells in their development and/or production.  Had I been aware of this grotesque use of murdered children before, I would have taken action sooner. To require me to continue to take vaccines that I have a moral objection to just because I have done so in the past shows a lack of compassion and flippant intolerance of my religious convictions and is flat out discriminatory to my beliefs as a Christian, which challenge me to test myself constantly and excise sin in my life whenever and wherever I find it, according to the Scriptures and the conviction of the Holy Spirit.  And allow me to be clear, I am not anti-vaccine.  I requested an exemption from the influenza vaccine because I found through my research that some of the influenza vaccines used aborted fetal cells.  When I discovered in December 2021 that all three influenza vaccines produced for, and distributed in, the United States were cultured in a dog's kidney cells instead of using aborted fetal cells I was relieved, and I elected to receive the vaccine because I felt no convictions that these vaccines condoned evil.  For the purpose of this appeal, however, I will focus exclusively on the Covid-19 vaccination and will endeavor to apply for

ATZL-JRO-N
SUBJECT: Appeal of Religious Accommodation Decision by the Office of the Surgeon General – 1SG Galey, Robert W. Jr., Task Force One, Operations Group

separate religious accommodations for future vaccines if they become necessary, as the Surgeon General recommends.

3.  The denial I received from the Surgeon General states "Covid-19 is a grave risk to the readiness of the force, and in your case, I find that vaccination is the least restrictive means to further the Department of the Army's compelling government interest, which includes protecting your health, the health of the force, and ensuring mission accomplishment."  The Surgeon General does not qualify or quantify any of his claims in this denial and this denial is all that he provided.  The Religious Freedom Restoration Act of 1993 (RFRA) states the Government may substantially burden an individual's exercise of religion only if it demonstrates that the application of the burden to the person is (1) in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that interest.  The burden rests with the government to demonstrate both factors in their entirety, not the individual requesting the exemption per DoDI 1300.17, September 1, 2020.  The Surgeon General declined to provide any evidence to me, that my being vaccinated would further the stated compelling government interest.  Nor did the Surgeon General show evidence that he considered any less restrictive means when pronouncing that I must violate my religious convictions or be separated from the Army.

4.  The denial letter I received is nearly identical (substitute name, rank, and prescribed Christian denomination) to all of the other OC/Ts from my unit, despite each of us submitting our own unique accommodation request based off our own beliefs and personnel situations.  It is not evident that The Office of the Surgeon General read my accommodation request.  For instance, there was no mention in my denial letter from the Surgeon General of me having tested positive for Covid-19 in September of 2021 (positive lab test attached) as stated in my original request for accommodation.  CDC studies claim "By early October (2021), persons who survived a previous infection had lower case rates than persons who were vaccinated alone." (https://www.cdc.gov/mmwr/volumes/71/wr/mm7104e1.htm#suggestedcitation JAN 28, 2022)  Proof of prior infection is in and of itself a less restrictive means of furthering the governmental interest of protecting the force according to the CDC's own findings.  It is a much less restrictive means than forcing me to violate my religious convictions or separating me from the Army. This CDC study was published almost two months before the Surgeon General decided my request.  I have faith in my Creator and the God given natural immunity I have as a result of contracting and surviving Covid-19.

5.  In the Surgeon General's denial letter he highlighted that "Furthermore, your chain of command emphasized that JRTC is unlike many other installations in that international armed forces go there to train; thus, those training individuals have an increased risk of contracting COVID-19 based on exposure during international travel and may unwittingly bring the disease to the installation."  This emphasis by my chain of command and echoed by the Surgeon General is baffling and sounds xenophobic. Covid-19 is everywhere on Earth and doesn't seem to care if someone is vaccinated or

2

ATZL-JRO-N
SUBJECT:  Appeal of Religious Accommodation Decision by the Office of the Surgeon
General – 1SG Galey, Robert W. Jr., Task Force One, Operations Group

not.  And to imply that one is more likely to catch Covid-19 from a foreigner that you
come into contact with versus casual interaction with a local Louisiana resident at the
movie theater or Walmart, or a fellow Soldier at the class VI is a disturbing world view.
Besides, there is a host of tools available to mitigate the spread of Covid-19; verifying
vaccination status or recovery from a prior infection, requiring a negative PCR test,
quarantine procedures upon arrival with suspected symptoms, or a bunch of other
protocols available to the unit and widely used at Fort Polk).  Also, JRTC is not a
unique 'installation'.  (JRTC is not an installation as referenced by the Surgeon
General, it is the Joint Readiness Training Center, a Command located on Fort Polk in Louisiana.)
JRTC on Ft. Polk is also not unique because it hosts international guests.  Most
installations in the United States and OCONUS have Service Members that are
routinely sent TDY abroad or have a temporary or permanent LNO from one or many
countries.  Every installation has Service members with relatives that live in foreign
countries or are married to their spouses who have relatives in foreign countries.  We
live in a global world, and to assume that anyone is unique or special because they
come into contact several times a year with 'obvious' foreigners is a narcissistic world
view.  We all come into constant contact with people that have recently traveled from far
away, almost every day.

6.  The Army has already approved seven permanent medical exemptions.  If these
seven Soldiers can obtain a waiver from the vaccine because of medical concerns and
continue to safely serve their country in uniform, then religious accommodations must
be granted if the they are determined to be sincerely held.  Anything less is religious
discrimination born out of fear or hate.  In a letter to the Hebrew Congregation in
Newport, Rhode Island, President George Washington wrote,  "It is now no more that
toleration is spoken of as if it were the indulgence of one class of people that another
enjoyed the exercise of their inherent natural rights, for, happily, the Government of the
United States, which gives to bigotry no sanction, to persecution no assistance, requires
only that they who live under its protection should demean themselves as good citizens
in giving it on all occasions their effectual support."  From the founding, our nation has
stood for religious toleration and guaranteed its citizens peace from bigots and
persecution.  After reviewing my chain of command's recommendations I am now
reminded it is often the senior leaders, who are charged with upholding and defending
the Constitution, who are often the first to succumb to their fears and prejudice, and are
also the first to lead the effort to trample over those rights contained in the Constitution.
I pray that this is not another dark time in American history.

7.  Finally, it is in the U.S. Army's best interest to accept a less restrictive means of
furthering its interests.  I will not violate my sincere religious beliefs for anything, let
alone because my career and livelihood is being threatened.  This means that if my
accommodation is ultimately denied, I will likely be separated from the Army.  The Army
has invested 16 years and millions of dollars training me.  I have eight combat
deployments filled with stressful combat experiences that the Army will never be able to
replicate and replace.  The Army has trained me to be a leader.  I have spent the last

3

ATZL-JRO-N
SUBJECT: Appeal of Religious Accommodation Decision by the Office of the Surgeon General – 1SG Galey, Robert W. Jr., Task Force One, Operations Group

three years training and coaching units on how to fight in Large Scale Combat Operations (LSCO) as we pivot away from the counter insurgency fight we have been fighting for the last 20 years. I am set to PCS to a deploy-able unit in the next 3 months and will be bringing all of that experience and expertise with me. If this appeal is denied, the Army will lose a dedicated and patriotic Senior NCO that still has a lot to offer the Army. It also bears mentioning that the mandate for Federal Civilian Employees and Federal Contractors has been blocked in the courts. This command utilizes hundreds of these employees that are not required to be vaccinated against Covid-19 to support and accomplish its mission every month with out presenting a grave danger to mission success. This also means that I could apply for one of these jobs if I am separated from the Army and could wind up working for the same command in the very same building and field environment that I currently work in.

8. In closing, the Founders envisioned a nation where religious people are free to practice their faith without fear of discrimination or retaliation by the Federal Government. For that reason, the Constitution enshrines and protects the fundamental right to religious liberty as Americans' first freedom. Federal law protects this freedom without undue interference by the Federal Government. James Madison said the free exercise of religion is "in its nature an unalienable right because the duty owed to one's creator is precedent both in order of time and in degree of obligation to the claims of Civil Society." Except in the narrowest circumstances, no one should be forced to choose between living out his or her faith and complying with a law or mandate. Thank you for your time and your consideration of this appeal.

9. The POC for this memorandum is the undersigned and can be contacted at (cell) ████████ or at █████████████████

1SG Robert W. Galey Jr.
Task Force One, Operations Group

2



DEPARTMENT OF THE ARMY
OFFICE OF THE ASSISTANT SECRETARY
MANPOWER AND RESERVE AFFAIRS
111 ARMY PENTAGON
WASHINGTON, DC 20310-0111

2 8 SEP 2022

SAMR (600-20f)

MEMORANDUM THRU Commanding General, Joint Readiness Training Center (JRTC) and Fort Polk, Fort Polk, LA 71459

FOR 1st Robert Galey Jr., Headquarters and Headquarters Company (HHC), Task Force 1, JRTC Operations Group, Joint Readiness Training Center (JRTC), Fort Polk, LA 71459

SUBJECT: Denial of Appeal for Religious Accommodation Request for Immunization Exemption

1. Your appeal of The Surgeon General's denial of your religious accommodation request for an immunization exemption for the COVID-19 vaccination is denied. This decision is final.

2. I considered your appeal and reviewed your specific case. This included an examination of your chain of command's recommendations, your unit Chaplain's finding that you hold a sincere religious belief, and your current duties and role as an Infantry Senior Sergeant (11Z), where you are required to coach and train company commanders from rotational and foreign units. Additionally, I considered the Director of the Public Health Directorate's assessment, risk of exposure and transmission, and medical resources available at Fort Polk, LA. Further, I considered all matters you submitted, both in your original request for exemption and in your appeal. When rendering my decision, I took into account the nature and sincerity of your religious beliefs regarding the COVID-19 vaccine.

3. Having weighed all these factors, in your case I have determined that vaccinating you is the least restrictive means to further the Army's compelling governmental interests of protecting the health of the force, ensuring Servicemembers are medically fit and ready to deploy worldwide, while minimizing the risk to, and maximizing the success of, a plethora of dangerous and critical missions. I find that alternatives such as masking and social distancing are insufficient because while they may provide some protection in the most optimal of circumstances, they do not provide protection from the likelihood or increased risk of serious illness, hospitalization, and death in the event of infection.

4. I strongly encourage you to reconsider your position regarding this vaccination Immunizations in general and the COVID-19 vaccine in particular are a safe and effective means of reducing the risk of serious illness or death as a result of infection by a vaccine-preventable disease. Additionally, COVID-19 vaccines continue to be developed for use, to include new vaccines that may have received approval since you

SAMR (600-20f)
SUBJECT: Denial of Appeal for Religious Accommodation Request for Immunization Exemption

sought an exemption. Therefore, I advise you to seek updated information about COVID-19 vaccines and consult with your healthcare provider and religious advisor in the event a vaccine is, or becomes available that would satisfy your religious concerns and enable you to comply with the Department of Defense's COVID-19 vaccine mandate.

5. If you elect not to receive the COVID-19 after notification of this denial, you may be processed for separation under applicable regulations or face other adverse action.

YVETTE K. BOURCICOT
Acting Assistant Secretary of the Army
(Manpower and Reserve Affairs)

For Official Use Only
Privacy Act Sensitive –Any misuse or unauthorized disclosure may result in both civil and criminal penalties

## DEVELOPMENTAL COUNSELING FORM
For use of this form, see ATP 6-22.1; the proponent agency is TRADOC.

### DATA REQUIRED BY THE PRIVACY ACT OF 1974

| | |
|---|---|
| AUTHORITY: | 5 USC 301, Departmental Regulations; 10 USC 3013, Secretary of the Army. |
| PRINCIPAL PURPOSE: | To assist leaders in conducting and recording counseling data pertaining to subordinates. |
| ROUTINE USES: | The DoD Blanket Routine Uses set forth at the beginning of the Army's compilation of systems or records notices also apply to this system. |
| DISCLOSURE: | Disclosure is voluntary. |

### PART I - ADMINISTRATIVE DATA

| Name (Last, First, MI) | Rank/Grade | Date of Counseling |
|---|---|---|
| GALEY, ROBERT | MSG/E8 | 20221006 |

| Organization | Name and Title of Counselor |
|---|---|
| HHC, JRTC OPS GRP, Fort Polk, LA 71446 | CPT Myers, Julissa J./Company Commander |

### PART II - BACKGROUND INFORMATION

**Purpose of Counseling:** (Leader states the reason for the counseling, e.g. Performance/Professional or Event-Oriented counseling, and includes the leader's facts and observations prior to the counseling.)

--NOTIFICATION OF EMPLACEMENT OF FLAG CODE B (Involuntary Separation)--

### PART III - SUMMARY OF COUNSELING
Complete this section during or immediately subsequent to counseling.

**Key Points of Discussion:**

The purpose is to notify you of the initiation of a suspension of favorable personnel actions FLAG Code B (Involuntary Separation).

MSG Galey, you are being counseled today 05 October 2022, because you have been FLAG'd for a code B (Involuntary Separation) Chapter 14-12c due to COVID vaccination refusal.

Involuntary Separation EXPLAINED (AR 600-8-2, p.4):
"Involuntary separation or discharge" (field initiated (Flag code B) or Headquarters, Department of the Army initiated (Flag code W)). Soldiers pending involuntary separation or discharge (AR 635-200 AR 600-8-24, AR 135-175, or AR 135-178) to include the Qualitative Management Program, must be flagged (except entry level performance and conduct separations initiated under AR 635-200). Soldiers will not be flagged solely for undergoing a medical evaluation board. The effective date of the Flag will be the date the commander signs the intent to separate notification memorandum to the Soldier or the date HQDA initiates an involuntary separation action.

REMOVAL CRITERIA (AR 600-8-2, p.9):
Involuntary separation or discharge. Remove the Flag on the date HQDA or the appropriate commander approves retention of the Soldier, or on the date the Soldier is reassigned to the transition point (Active Component) or discharge orders are published (Reserve Component).

ACTIONS PROHIBITED BY A FLAG (AR 600-8-2, p.11-12):
A properly imposed Flag prohibits the following personnel actions unless otherwise specified in this regulation:
o Promotions in grade, lateral appointments, and frocking (AR 600-8-19, AR 600-8-29, and AR 135-155).
o Recommendation for, and receipt of, individual awards and decorations. Exceptions to this policy are outlined in AR 600-8-22.
o Attendance at military or civilian schools. The waiver approval authority for attendance at military or civilian schools is the DCS, G-3/5/7 (DAMO-TR).
o For Officers, military schools include Officer Education System courses and functional area and skill specialty training courses. The Basic Officer Leader courses are not included.
o Assumption of Command (AR 600-20).

r. Flag code W "Involuntary separation or discharge." (Headquarters, Department of the Army initiated). Soldiers pending a Show Cause action, involuntary separation, or discharge (AR 635 – 200, AR 600 – 8 – 24, AR 135 – 175, or AR 135 – 178) to include selection for separation under the Qualitative Management Program, must be flagged (except entry level performance and conduct separations initiated under AR 635 – 200). Soldiers will not be flagged solely for referral, to include required referral, to the DES. The effective date of the Flag will be the date HQDA
AR 600–8–2 • 5 April 2021 8
initiates an involuntary separation action. The Soldier will separate and the Flag will remain on the Soldier's record, this applies to both Regular Army and USAR Soldiers. HQDA initiated Flag is authenticated by HRC (AHRC – OPL – R (officer) or AHRC – EPF – M (enlisted)) (see para 1–10d).

### OTHER INSTRUCTIONS

This form will be destroyed upon: reassignment (other than rehabilitative transfers), separation at ETS, or upon retirement. For separation requirements and notification of loss of benefits/consequences see local directives and AR 635-200.

**DA FORM 4856, JUL 2014**     PREVIOUS EDITIONS ARE OBSOLETE.     Page 1 of 2
APD LC v1.04ES

**Plan of Action** *(Outlines actions that the subordinate will do after the counseling session to reach the agreed upon goal(s). The actions must be specific enough to modify or maintain the subordinate's behavior and include a specified time line for implementation and assessment (Part IV below)*

o Attend all required Medical [Labs, Hearing, Dental, PHII], EBH Evaluation, SFL-TAP, and subsequent pre-clearing with escort of higher rank, as required by installation.

o Completion of all separation requirements is required prior to returning to full work-related duties/functions.

o Continue to be a productive member of the Operations Group Team

---

**Session Closing:** *(The leader summarizes the key points of the session and checks if the subordinate understands the plan of action. The subordinate agrees/disagrees and provides remarks if appropriate.)*

Individual counseled: [ ] I agree    [ ] disagree with the information above.

Individual counseled remarks:

Signature of Individual Counseled:                                                          Date:

---

**Leader Responsibilities:** *(Leader's responsibilities in implementing the plan of action.)*

Signature of Counselor:                                                          Date:

---

### PART IV - ASSESSMENT OF THE PLAN OF ACTION

**Assessment:** *(Did the plan of action achieve the desired results? This section is completed by both the leader and the individual counseled and provides useful information for follow-up counseling.)*

Counselor:                              Individual Counseled:                              Date of Assessment:

---

**Note:  Both the counselor and the individual counseled should retain a record of the counseling.**